David A. Bledsoe, OSB No. 851548
DBledsoe@perkinscoie.com
PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Telephone: 503.727.2000
Facsimile: 503.727.2222

C. Dana Hobart (*pro hac vice pending*)
DHobart@mckoolsmithhennigan.com
Mary H. Chu (*pro hac vice pending*)
MChu@mckoolsmithhennigan.com
McKOOL SMITH, P.C.
865 South Figueroa Street
Suite 2900
Los Angeles, California 90017
Telephone: (213) 694-1200
Facsimile: (213) 694-1234

Attorneys for Plaintiff
Evergreen International Airlines, Inc.

FILED 22 NOV '11 15:55 USDC-ORP

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| EVERGREEN INTERNATIONAL AIRLINES, INC., <br><br> Plaintiff, <br><br> vs. <br><br> ANCHORAGE ADVISORS, LLC; ANCHORAGE CAPITAL GROUP, LLC; NEXGEN AVIATION CAPITAL, LLC, <br><br> Defendants. | No. CV'11-1416-___PK <br><br> **COMPLAINT** <br><br> **Action for Intentional Interference With Contract And For Unjust Enrichment** <br><br> **DEMAND FOR JURY TRIAL** <br><br> (28 U.S.C. § 1332) |

1- COMPLAINT

74457-0002/LEGAL22104192.1

# 44031

Perkins Coie LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

Plaintiff Evergreen International Airlines, Inc. ("Evergreen"), for its Complaint against Defendants Anchorage Advisors LLC and Anchorage Capital Group LLC (collectively "Anchorage") and NexGen Aviation Capital LLC ("NexGen") alleges, as follows:

## THE PARTIES

1.  Plaintiff Evergreen is and at all relevant times mentioned herein has been a corporation duly organized and existing under the laws of the State of Oregon, with its principal place of business in McMinnville, Oregon.

2.  Defendant Anchorage Advisors, LLC is and at all relevant times mentioned herein has been a Delaware limited liability company, with its principal place of business in New York, New York.

3.  Defendant Anchorage Capital Group, LLC, the successor-in-interest to Anchorage Advisors, LLC is and at all relevant times mentioned herein has been a Delaware limited liability company, with its principal place of business in New York, New York.

4.  Defendant NexGen Aviation Capital LLC is and at all relevant times mentioned herein has been a Delaware limited liability company, with its principal place of business in Bedford, New York.

5.  At all times herein mentioned, each of the Defendants were the agents, servants or employees of each other, and in doing the things herein alleged were acting within the course and scope of their authority as those agents, servants or employees, and with the permission and consent of its co-defendants.

## JURISDICTION AND VENUE

6.  Subject matter jurisdiction of this Court is based on 28 U.S.C. § 1332, in that the action is between a citizen of Oregon and citizens of a foreign state and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.

2- COMPLAINT

74457-0002/LEGAL22104192.1

Perkins Coie LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

7.  Venue is proper in this Court under 28 U.S.C. § 1391 in that a substantial part of the events or omissions giving rise to this controversy occurred within the District of Oregon, Portland Division.

## GENERAL ALLEGATIONS

### The Aircraft Purchase Agreements

8.  In or around August, 2007, Evergreen entered into three separate Aircraft Purchase Agreements (collectively, the "Evergreen/Avion Agreements") with Avion Aircraft Trading HF ("Avion"), pursuant to which Avion was to deliver and Evergreen was to purchase three 747-400 airplanes bearing Serial Nos. 25238, 25302, and 25630 (the "Aircraft") on October 31, 2009, October 31, 2010 and November 30, 2010, respectively. Pursuant to the Evergreen/Avion Agreements, Evergreen paid Avion a down payment of $5 million for each of the three Aircraft, for a total deposit paid by Evergreen of $15 million.

9.  Prior to entering into the Evergreen/Avion Agreements, in or about August 2006, Avion had entered into three agreements with Société Air France ("Air France") to purchase the Aircraft that Avion contracted to sell to Evergreen (collectively the "Air France/Avion Agreements"). Avion paid Air France a down payment of $4 million for each of the three Aircraft, for a total deposit of $12 million. Avion used Evergreen's $15 million deposit to off-set Avion's $12 million deposit paid to Air France.

10. Among other provisions, the Evergreen/Avion Agreements required Avion, as a condition precedent to Evergreen's obligation to purchase the Aircraft, to deliver to Evergreen good and marketable title to the Aircraft as demonstrated by a full warranty bill of sale evidencing the transfer of title.

11. By late 2009 Avion was experiencing difficulty arranging the financing necessary to purchase the first of the Aircraft on the date specified in the Air France/Avion Agreements. Consequently, Avion sought and obtained Air France's forbearance in declaring Avion in default

3-  COMPLAINT

74457-0002/LEGAL22104192.1

Perkins Coie LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

of the first Air France/Avion Agreement in order to allow Avion additional time to obtain financing for the aircraft.

12. At around the same time, Evergreen was considering various options for financing its own purchase of the Aircraft from Avion. One of the options Evergreen considered involved a sale/leaseback transaction, whereby Evergreen would assign its purchase rights under the Evergreen/Avion Agreements to a third party and that third party would, in turn, purchase the Aircraft and then lease the Aircraft back to Evergreen.

13. Despite Avion being unable to deliver the first Aircraft on time as of October 31, 2009, Evergreen decided to forbear in declaring Avion in default under the Evergreen/Avion Agreements to allow Avion additional time to acquire the Aircraft from Air France.

### The Anchorage/NexGen Letter of Intent

14. Defendant Anchorage is an investment firm that invests in a wide range of assets including aircraft, corporate debt, credit derivatives, and equities. In March 2010, Anchorage managed approximately $9 billion in capital across multiple funds and managed approximately $6.7 billion in its flagship fund, Anchorage Capital Partners. Among other activities, Anchorage provides private equity to invest directly or to co-invest with other entities in the acquisition or leasing of aircraft.

15. Defendant NexGen is an investment and advisory company whose principal is Farhood Azima. NexGen focuses on the aviation industry with principal investments in aircraft acquisition and advisory services. NexGen is a private equity investor in aviation businesses and assets and often co-invests with larger private equity funds, such as defendant Anchorage.

16. In early 2010, Anchorage and NexGen joined together, as agents for each other and as co-investors, to propose a sale/leaseback transaction to Evergreen for the Aircraft. In or about January, 2010, defendant Anchorage, on behalf of itself and as agent for NexGen, sent by email to Evergreen in McMinnville, Oregon, a Confidential Transaction Discussion Outline also

4- COMPLAINT

74457-0002/LEGAL22104192.1

Perkins Coie LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

referred to as a letter of intent ("LOI"). The LOI proposed a transaction whereby defendant NexGen would purchase the Aircraft for an "[a]ssumed net purchase price of $34 [million]" and then lease the Aircraft to Evergreen, through its parent Evergreen International Aviation, Inc. ("Evergreen Aviation"), over a 10 year period at a "Lease Rate Factor" of 1.67% of the net purchase price per month. Although the LOI pertained to only one of the Aircraft, the parties intended that the LOI and subsequent lease agreement would serve as a template that would apply to all three Aircraft.

17. The terms of the LOI demonstrate both that Defendants knew of the Evergreen/Avion Agreements as well as their key provisions, particularly that Evergreen had paid a deposit of $5 million for each of the three Aircraft. The LOI provided that Evergreen, through its parent Evergreen Aviation, would assign its purchase rights under the Evergreen/Avion Agreements to NexGen and acknowledged that Evergreen had paid a $5 million deposit in connection with its contemplated purchase of each Aircraft. The proposed lease transaction described in the LOI provided that Evergreen's $5 million per Aircraft deposit would be credited to Evergreen by applying the Evergreen deposit to reduce the purchase price Defendants would pay to acquire the Aircraft and then, in turn, reduce Evergreen's monthly rental payments in a commensurate amount (since the "Lease Rate Factor" was to be 1.67% of whatever the net purchase price of the Aircraft turned out to be).

18. On March 8, 2010, in McMinnville, Evergreen, through its parent Evergreen Aviation, executed the LOI. The LOI provided Defendants with an exclusive 27-day period (which was subsequently extended an additional 30 days) to negotiate the sale/leaseback transaction. The exclusivity provision required Evergreen to terminate all discussions with other entities concerning the lease, sale, or purchase of the Aircraft.

5- COMPLAINT

74457-0002/LEGAL22104192.1

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

### Defendants Learn Of The Air France Opportunity

19.     In early 2010, Evergreen's Chairman, Tim Wahlberg, learned from an individual who had previously assisted Evergreen with financing options for the Aircraft that Air France was willing to reduce the purchase price of each Aircraft below $30 million, a significant discount from the $34 million purchase price that was assumed in the LOI. Mr. Wahlberg informed Defendants of his knowledge that Air France was likely to accept a purchase price below $30 million, expecting that Defendants would pass the price reduction on to Evergreen through a reduced monthly rental as contemplated in the LOI. However, rather than use that information to benefit Evergreen, and unbeknownst to Evergreen, Defendants used the pricing information to begin their own efforts to acquire the Aircraft for themselves, depriving Avion of its contractual right to acquire the Aircraft, and, thereby, cause it to breach the agreements with Evergreen.

20.     Promptly following execution of the LOI, Mr. Wahlberg informed Avion's principal, Magnus Thorstenn, that Evergreen had entered into the LOI with Defendants and explained that Defendants would be working with Avion to begin direct negotiations with Air France to acquire the Aircraft. Mr. Thorstenn, in turn, met with Defendants and introduced them to Patrick Halluin, the Air France executive handling the negotiations. Thereafter, Defendants engaged in direct, exclusive negotiations with Air France to which neither Evergreen nor Avion were parties.

21.     Simultaneously, Defendants negotiated with Evergreen regarding the proposed lease agreement and undertook an extensive evaluation of Evergreen's financial status and business plans relating to its intended use of the Aircraft. In connection with the parties' negotiations, Evergreen provided Anchorage and NexGen substantial, confidential information. Among other information provided by Evergreen was the company's financial statements, annual

6-   COMPLAINT

74457-0002/LEGAL22104192.1

Perkins Coie LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

plan or forecast, and projections from operations showing the revenue that the Aircraft would produce once incorporated into Evergreen's fleet.

22. Defendants' negotiations with Evergreen over the terms of the proposed lease agreement were carried out through numerous telephone conferences with Evergreen executives who were in McMinnville. These conference calls occurred on, at least, the following occasions:

    a. March 11, 2010

    b. March 19, 2010

    c. April 1, 2010

    d. April 8, 2010

    e. April 21, 2010

    f. May 7, 2010

23. On April 6, 2010, Aziz Hassanali of Anchorage, acting for Anchorage and as agent for NexGen, emailed Evergreen a draft of the proposed lease between NexGen and Evergreen. Mr. Hassanali informed Evergreen that Defendants were working on entering into a definitive term sheet with Air France for the purchase of all three Aircraft. The April 6, 2010, draft lease was for only one of the Aircraft, serial number 25328, but was to serve as a template for the remaining two Aircraft.

### Defendants Renege On The LOI To Force Evergreen To Abandon The Deal

24. According to Mr. Hassanali, the lease rate set forth in the April 6, 2010, draft lease agreement for Aircraft 25328 was based on a revised purchase price Defendants had negotiated with Air France. However, the monthly rental actually contained in the draft lease came as a surprise to Evergreen because it was far higher than what would have resulted by applying the 1.67% Lease Rate Factor to the revised net purchase price. Since the LOI provided that, in the event that the net purchase price was reduced below $34 million, the rental rate would be reduced to reflect the reduced purchase price, Defendants' proposed lease rate should have

7- COMPLAINT

74457-0002/LEGAL22104192.1

Perkins Coie LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

been reduced in an equal amount. However, even though the purchase price had been reduced, the monthly rental set forth in the April 6, 2010 draft lease agreement was $575,000 per month for the first 60 months and $425,000 for the next 60 months which was significantly higher than the 1.67% formula specified in the LOI. This was not the only material deviation from the terms of the LOI. The LOI also stated that Evergreen would pay a security deposit equal to two months rent, but the April 6, 2010, draft lease agreement doubled that amount, requiring a security deposit equal to four months rent.

25. The parties engaged in numerous conference calls concerning the April 6, 2010 draft lease agreement. Then, on April 21, 2010, Evergreen provided Defendants with a revised draft lease. This April 21, 2010 draft restored the monthly rental to the 1.67% percentage set forth in the LOI and reduced the security deposit from four to two months as also specified in the LOI.

26. Three days after receiving Evergreen's revised draft lease, Mr. Azima of NexGen wrote to Mr. Wahlberg expressing concern about the monthly rent issue. Mr. Azima also informed Evergreen that Defendants would be entering into a binding letter of intent with Air France within the next two days and threatened that if Evergreen did not agree to terms with Defendants, Defendants would sell the planes to other parties.

27. By April 28, 2010, Defendants had signed a binding letter of intent with Air France. On April 30, 2010, in an effort to force Evergreen to accept the exorbitant rental rate terms dictated by Defendants, Mr. Farhood came to Evergreen headquarters in McMinnville and met with Evergreen executives.

28. Following this meeting, on May 6, 2010, Geoff Kass, an attorney representing both Defendants, sent by email to Evergreen a further revised draft lease agreement. This May 6 draft, however, still failed to apply the 1.67% rental factor as the monthly rent and still included

8- COMPLAINT

74457-0002/LEGAL22104192.1

Perkins Coie LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

a four month security deposit (which, after six months, could reduce to a two month deposit if certain conditions were satisfied).

29. On May 19, 2010, Mr. Aziz informed Evergreen that Defendants were planning to take possession of the Aircraft the first week of June and provided Evergreen with another revised lease draft. As before, however, this draft still failed to comport with the terms of the parties' LOI and the parties' negotiations collapsed.

### Defendants' Wrongful Interference With Contract

30. Despite Defendants' unwillingness to enter into a lease agreement with Evergreen that complied with the terms of the LOI, Evergreen still expected that Avion would nevertheless acquire the Aircraft from Air France and offer them for sale to Evergreen as required by the Evergreen/Avion Agreements. However, Defendants deliberately and intentionally interfered with the Evergreen/Avion Agreements by causing Air France to terminate the Air France/Avion Agreements and thereby intentionally induce Avion to breach the Evergreen/Avion Agreements. Furthermore, Defendants accomplished this interference through improper means by, among other things, effectively stealing Evergreen's $15 million deposit on the Aircraft and knowingly applying it to reduce the purchase price Defendants paid to Air France to acquire the Aircraft. Moreover, Defendants' interference with the Evergreen/Avion Agreements was undertaken for the improper purpose of acquiring the Aircraft for themselves – at a substantial discount that could only have been achieved through Defendants' relationship with Evergreen – so that Defendants could, and did, in turn resell the Aircraft at a substantial profit to a third party.

31. As a result of Defendants' intentional acts, which included causing Air France to terminate its agreements with Avion, Avion could not deliver the Aircraft to Evergreen as required by the Evergreen/Avion Agreements. Accordingly, on June 16, 2010, Avion provided written notification to Evergreen of the "immediate termination of the [Evergreen/Avion] Purchase Agreements."

9- COMPLAINT

74457-0002/LEGAL22104192.1

Perkins Coie LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

32. On June 24, 2010, in response to an Evergreen inquiry regarding the status of the Aircraft, Air France confirmed that it had terminated the Air France/Avion Agreements and had agreed to sell the Aircraft to others, i.e., Defendants.

33. As a result of Defendants' intentional interference with the Evergreen/Avion Agreements, Evergreen was deprived of its contractual right to purchase the Aircraft and, consequently, lost significant revenue and profits that Evergreen would have earned had the Aircraft been placed into operation in Evergreen's fleet, or, alternatively, the profit Evergreen would have earned had Evergreen resold the aircraft to a third party.

## FIRST CAUSE OF ACTION

### (INTENTIONAL INTERFERENCE WITH CONTRACT)

34. Evergreen incorporates by reference and re-alleges each and every allegation of the prior paragraphs as if fully set forth herein.

35. Evergreen had three valid and existing Aircraft Purchase Agreements with Avion under which Avion was to deliver and Evergreen was to purchase the three Aircraft on October 31, 2009, October 31, 2010 and November 30, 2010, respectively.

36. Defendants knew of the Evergreen/Avion Agreements.

37. Defendants intentionally induced Avion to breach the Evergreen/Avion Agreements by causing Air France to terminate its three aircraft purchase agreements with Avion which, thereby, made it impossible for Avion to perform its contractual obligations under the Evergreen/Avion Agreements.

38. As a result of Defendants' intentional acts, which deprived Avion of the right and ability to acquire the Aircraft from Air France and thereby prevented Avion from delivering the Aircraft to Evergreen pursuant to the Evergreen/Avion Agreements, on June 16, 2010, Avion provided written notification to Evergreen terminating the Evergreen/Avion Agreements.

10- COMPLAINT

74457-0002/LEGAL22104192.1

Perkins Coie LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

39. Defendants accomplished their interference with the Evergreen/Avion Agreements through improper means by, among other acts, misappropriating Evergreen's $15 million deposit and applying those funds to reduce the net purchase price that Defendants paid to Air France to acquire the Aircraft. Moreover, Defendants' interference with the Evergreen/Avion Agreements was undertaken for the improper purpose of acquiring the Aircraft for themselves so that Defendants could, and did, in turn resell the Aircraft at a substantial profit in an amount believed to be in excess of $10 million for each of the three Aircraft.

40. Defendants' intentional interference with the Evergreen/Avion Agreements has directly and proximately resulted in damages to Evergreen in an amount to be determined, according to proof at trial.

41. Defendants' actions were willful and oppressive and undertaken with a deliberate disregard for the rights of Evergreen, and Evergreen is, therefore, entitled to punitive damages.

## SECOND CAUSE OF ACTION
## (UNJUST ENRICHMENT)

42. Evergreen incorporates by reference and re-alleges each and every allegation of the prior paragraphs as if fully set forth herein.

43. Pursuant to the Evergreen/Avion Purchase Agreements, Evergreen paid Avion a down payment of $5 million for each of the three Aircraft, for a total deposit paid by Evergreen of $15 million. Avion, in turn, used Evergreen's deposit to off-set Avion's $12 million deposit paid to Air France.

44. Defendants had notice of the fact that Evergreen had paid $15 million as a deposit for the three Aircraft Evergreen intended to purchase from Avion. The $15 million deposit paid by Evergreen is an amount that rightfully belongs to Evergreen and was knowingly and intentionally taken by Defendants without Evergreen's consent or permission and against its will

11- COMPLAINT

74457-0002/LEGAL22104192.1

Perkins Coie LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

and was wrongfully used by Defendants to reduce the price Defendants paid Air France to purchase the Aircraft from Air France.

45. Defendants were not bona fide purchasers for value and without notice of Evergreen's deposit. On the contrary, Defendants knew that Evergreen had paid the deposit of $15 million toward the purchase price of the Aircraft, Defendants intentionally applied the deposit to reduce Defendants' purchase price, and now Defendants possess Evergreen's deposit in the form of profit from the sale of the Aircraft or the Aircraft themselves.

46. The Aircraft acquired by Defendants, or the sums received by Defendants in the sale of the Aircraft to third parties, constitute Evergreen's $15 million deposit and said sum, or the Aircraft purchased using Evergreen's deposit, rightfully belongs to Evergreen.

47. If Defendants do not return the $15 million deposited by Evergreen, this will constitute unjust enrichment. As a remedy, Evergreen is entitled to return of its deposit from Defendants and/or is entitled to the imposition of a constructive trust on the funds received by Defendants in the sale of the Aircraft.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Evergreen International Airlines, Inc. prays for relief against Anchorage Advisors, LLC, Anchorage Capital Group LLC and NexGen Aviation Capital as set forth below:

### ON THE FIRST CAUSE OF ACTION

1. For damages in an amount not less than $15 million to be proven at trial;
2. For pre- and post-judgment interest;
3. For punitive damages;
4. For the costs and expenses of suit, including attorney's fees as appropriate; and
5. For such other and further relief as the Court deems just and proper.

12- COMPLAINT

74457-0002/LEGAL22104192.1

Perkins Coie LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

## ON THE SECOND CAUSE OF ACTION

1. For damages in an amount not less than $15 million to be proven at trial;

2. For pre- and post-judgment interest;

3. For the costs and expenses of suit, including attorney's fees as appropriate; and

4. For such other and further relief as the Court deems just and proper.

DATED: November 22, 2011

*[signature]*

David A. Bledsoe, OSB No. 851548
DBledsoe@perkinscoie.com
**PERKINS COIE LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Telephone: 503.727.2000
Facsimile: 503.727.2222

C. Dana Hobart (*Pro Hac Vice Pending*)
Mary H. Chu (*Pro Hac Vice Pending*)
**McKOOL SMITH, P.C.**
865 South Figueroa Street, Suite 2900
Los Angeles, California 90017
Telephone: 213.694.1200
Facsimile: 213.694.1234

*Attorneys for Plaintiff,*
*Evergreen International Airlines, Inc.*

13- COMPLAINT

74457-0002/LEGAL22104192.1

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222