IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EVERGREEN INTERNATIONAL
AIRLINES, INC.,

      Plaintiff,

                              3:11-CV-1416-PK

v.

                              FINDINGS AND
                              RECOMMENDATION

ANCHORAGE ADVISORS, LLC,
ANCHORAGE CAPITAL GROUP,
LLC, and NEXGEN AVIATION
CAPITAL, LLC,

      Defendants.

PAPAK, Magistrate Judge:

      Plaintiff Evergreen International Airlines, Inc. ("Evergreen"), filed this action against

defendants Anchorage Advisors, LLC, Anchorage Capital Group, LLC, and Nexgen Aviation

Capital, LLC,[1] on November 22, 2011. Evergreen alleges defendants' liability for intentional

interference with economic relations and for unjust enrichment arising out of defendants'

---

      [1] Anchorage Capital Group, LLC, is apparently the successor in interest to Anchorage
Advisors, LLC. Defense counsel purports to represent all three named defendants.

Page 1 - FINDINGS AND RECOMMENDATION

purchase of three aircraft from Air France that Evergreen had been seeking to purchase or lease, through one or more intervening third-party purchasers, in its own behalf. This court has subject-matter jurisdiction over Evergreen's claims pursuant to 28 U.S.C. § 1332, based on the complete diversity of the parties and the amount in controversy.

Now before the court is defendants' motion (#15) to dismiss under Federal Civil Procedure Rule 12(b)(2) for lack of personal jurisdiction or, alternatively, under Federal Civil Procedure Rule 12(b)(6) for failure to state a claim. I have considered the motion, oral argument on behalf of the parties, and all of the pleadings and papers on file. For the reasons set forth below, to the extent defendants seek dismissal of Evergreen's claims for lack of personal jurisdiction, their motion should be denied, and to the extent defendants seek dismissal of Evergreen's claims pursuant to Rule 12(b)(6), for failure to state a claim on which relief can be granted, defendants motion should be denied as to Evergreen's claim for intentional interference with economic relations and granted as to Evergreen's claim for unjust enrichment. Evergreen's unjust enrichment claim should be dismissed without prejudice.

## LEGAL STANDARDS

### I.    Motion to Dismiss for Lack of Personal Jurisdiction

A motion to dismiss for lack of personal jurisdiction is governed by Federal Civil Procedure Rule 12(b)(2). *See* Fed. R. Civ. P. 12(b)(2). "In opposition to a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper." *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008), *citing Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990). In evaluating the defendant's motion, "[t]he court may consider evidence presented in affidavits to assist it in its determination and may order

Page 2 - FINDINGS AND RECOMMENDATION

discovery on the jurisdictional issues." *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001),

*citing Data Disc, Inc. v. Systems Technology Assoc., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977).

If the court decides the motion·based on the pleadings and affidavits submitted by the parties

without conducting an evidentiary hearing, "the plaintiff need make only a *prima facie* showing

of jurisdictional facts to withstand the motion to dismiss." *Id., quoting Ballard v. Savage*, 65

F.3d 1495, 1498 (9th Cir. 1995). In the absence of such an evidentiary hearing, the court accepts

uncontroverted allegations contained within the plaintiff's complaint as true, and resolves

conflicts between statements contained within the parties' affidavits in the plaintiff's favor. *See*

*id.*

## II.    Motion to Dismiss for Failure to State a Claim

To survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint

must contain more than a "formulaic recitation of the elements of a cause of action;" specifically,

it must contain factual allegations sufficient to "raise a right to relief above the speculative level."

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To raise a right to relief above the

speculative level, "[t]he pleading must contain something more . . . than . . . a statement of facts

that merely creates a suspicion [of] a legally cognizable right of action." *Id., quoting* 5 C. Wright

& A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004); *see also* Fed. R.

Civ. P. 8(a). Instead, the plaintiff must plead affirmative factual content, as opposed to any

merely conclusory recitation that the elements of a claim have been satisfied, that "allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009). "In sum, for a complaint to

survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from

that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. United States Secret Serv.*, 572 F.3d 962, 970 (9th Cir. 2009), *citing Iqbal*, 129 S. Ct. at 1949.

"In ruling on a 12(b)(6) motion, a court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007). In considering a motion to dismiss, this court accepts all of the allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *See Kahle v. Gonzales*, 474 F.3d 665, 667 (9th Cir. 2007). Moreover, the court "presume[s] that general allegations embrace those specific facts that are necessary to support the claim." *Nat'l Org. for Women v. Scheidler*, 510 U.S. 249, 256 (1994), *quoting Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). The court need not, however, accept legal conclusions "cast in the form of factual allegations." *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

## FACTUAL BACKGROUND

### I.  The Parties

Plaintiff Evergreen is an Oregon corporation with its principal place of business in McMinnville, Oregon. Evergreen is in the business of transporting cargo and passengers by air.

Defendant Anchorage Advisors, LLC, is (or was) a Delaware limited liability company with its principal place of business in New York, New York. Defendant Anchorage Capital Group, LLC, the successor-in-interest to Anchorage Advisors, LLC, is likewise a Delaware limited liability company with its principal place of business in New York, New York. Defendant NexGen Aviation Capital, LLC, is a Delaware limited liability company with its principal place of business in Bedford, New York. The defendants are investment firms specializing in the

aviation industry.

## II.    Evergreen's Allegations[2]

In or around August 2006, third-party Avion Aircraft Trading HF (an Icelandic company headquartered in Iceland; hereinafter, "Avion") entered into three separate agreements with third-party Société Air France (a French company headquartered in France; hereinafter, "Air France"), each for the purchase of a 747-400 airplane by Avion from Air France. Each of the three Avion/Air France agreements called for Avion to pay a deposit of $4 million towards the purchase of the subject aircraft. Accordingly, Avion paid Air France a total deposit of $12 million in or around August 2006 toward the purchase of the three aircraft.

Approximately one year later, in or around August 2007, plaintiff Evergreen entered into three separate contracts with Avion, each for the purchase by Evergreen from Avion of one of the three 747-400 airplanes Avion had previously contracted to purchase from Air France. At the time Evergreen and Avion entered into the Evergreen/Avion contracts, Avion had not yet taken possession of any of the three subject aircraft. Pursuant to the Evergreen/Avion contracts, in or around August 2007 Evergreen paid Avion a total deposit of $15 million towards the purchase of the three aircraft, or three deposits of $5 million each (one in connection with each of the three contracts). Under the Evergreen/Avion contracts, Avion was obliged to deliver to Evergreen the 747-400 airplane bearing Serial No. 25238 on October 31, 2009, the 747-400 airplane bearing Serial No. 25302 on October 31, 2010, and the 747-400 airplane bearing Serial No. 25630 on November 30, 2010.

---

[2] The following recital of facts constitutes my construal of the allegations of Evergreen's complaint under the legal standard applicable to a dismissal motion brought under Federal Civil Procedure Rule 12(b)(6).

By late 2009, Avion was experiencing difficulties in financing the purchase of the first of the three aircraft from Air France. Avion successfully negotiated with Air France to obtain its forbearance in refraining from declaring Avion to be in default under the first of the three Avion/Air France agreements, in order to permit Avion additional time to finance the contemplated purchase. At the same time, Evergreen was considering various alternative methods of financing its own purchase of the aircraft from Avion, including the possibility of identifying a third-party purchaser willing to accept assignation of Evergreen's rights under the Evergreen/Avion contracts and thereafter to purchase the subject aircraft from Avion and lease them to Evergreen. When Avion was unable to effect the purchase of the first airplane from Air France by October 31, 2009, and was consequently unable to deliver that airplane to Evergreen by the agreed-upon date, Evergreen forebore to declare Avion in default of the first Evergreen/Avion contract.

In or around January 2010, having apparently learned via unspecified means that Evergreen was seeking a third party willing to accept assignment of Evergreen's rights under the Evergreen/Avion agreements for the purpose of purchasing the subject aircraft from Avion in order to lease them to Evergreen, defendants initiated contact with Evergreen by email, proposing to serve as Evergreen's contemplated third-party assignees/purchasers/lessors. Defendants included in their email message a formal written proposal (the "proposal" or "proposal letter") according to the proposed terms of which defendant NexGen Aviation Capital, LLC ("NexGen"), would accept assignment of Evergreen's rights under the first of the three Evergreen/Avion contracts, would purchase the subject aircraft from Avion for a total purchase price of $34 million, and would lease the purchased aircraft to Evergreen under a 10-year lease, with a

monthly lease payment in the amount of 1.67% of the net purchase price of the subject aircraft. According to the terms of defendants' proposal, defendants would have a 27-day period in which to negotiate the transactions it would be called upon to execute, during which time Evergreen would be obliged to refrain from further discussions with any third parties regarding the purchase or lease of the subject aircraft. The proposal letter acknowledged that Evergreen had already made a $5 million down payment to Avion towards the purchase of the subject aircraft, and proposed that the amount of that deposit be credited to Evergreen through commensurate reductions in Evergreen's proposed monthly lease payments. The parties contemplated that, if the arrangement proved successful, it would be replicated in connection with the purchase and lease of the aircraft that were the subjects of the remaining two Evergreen/Avion contracts.

In or around early 2010, Evergreen's principal Tim Wahlberg learned through unspecified means that Air France had become willing to reduce the purchase price of each of the three aircraft to below $30 million.[3] On March 8, 2010, Evergreen agreed to the terms of defendants' proposal letter. At or around that time, Wahlberg advised defendants of his understanding that Air France had become willing to reduce the purchase prices of each of the three aircraft. Evergreen also advised Avion that "Defendants would be working with Avion to begin direct negotiations with Air France to acquire the Aircraft." Complaint, ¶ 20. Avion introduced defendants to their contacts at Air France, and defendants thereafter conducted negotiations directly with Air France, without the participation of either Avion or Evergreen, but with Evergreen's knowledge that they were doing so. By not later than April 6, 2010, Evergreen had

---

[3] It is not clear from Evergreen's allegations whether the reduction in the price Air France was willing to receive in connection with the sale of the aircraft was a result of Avion's $4 million per aircraft deposit, or was independent of Avion's deposit.

received from defendants an email message specifying that defendants were "working on entering into a definitive term sheet with Air France for the purchase of all three Aircraft." *Id.* at ¶ 23. It therefore appears that, by not later than early April 2010, Evergreen understood that defendants were working, ostensibly on Evergreen's behalf, towards an arrangement whereby Avion would no longer have any involvement in the purchase of the aircraft from Air France.

During March and April 2010, Evergreen and defendants negotiated the terms of a lease agreement to be executed in the event defendants succeeded in purchasing the aircraft. On April 6, 2010, defendants sent Evergreen a copy of a proposed lease agreement pursuant to which Evergreen would pay NexGen a monthly lease payment of $575,000 per month for the first five years of the lease, and $425,000 per month for the last five years of the lease. Although the average monthly lease payment over the life of the ten-year lease would thus be $500,000, or just under 1.67% of $30 million ($501,000), Evergreen takes the position that the proposed payments were both "significantly higher" than the amount that would be obtained according to the originally proposed formula (1.67% of the ultimate purchase price) and a "material deviation" from the terms of the proposal letter. *Id.* at 24. In addition, the proposed lease agreement required Evergreen to pay a security deposit equal to four months' rent, whereas the proposal letter had contemplated a security deposit in the amount of two months' rent. On April 21, 2010, Evergreen sent to the defendants a revised proposed lease agreement, which apparently provided for uniform monthly lease payments in the approximate amount of 1.67% of the purchase price of the aircraft (or $501,000) and reduced the security deposit to two months' rent.

On April 28, 2010, defendants entered into a binding agreement with Air France for the purchase by defendants from Air France of the first of the three aircraft. Defendants and

Evergreen continued to negotiate the terms of a lease agreement without success until May 19,

2010, whereupon negotiations came to an end, with no agreement having been reached.

Defendants subsequently effected the purchase of each of the remaining two aircraft that were the

subject of the Avion/Air France agreements and the Evergreen/Avion contracts. According to

Evergreen's allegations, the $12 million deposit Avion paid to Air France as a deposit toward the

purchase of the three aircraft was credited toward defendants' purchase of the three aircraft.

Evergreen expressly alleges that defendants purchased the three aircraft with the affirmative

intent to cause Air France to terminate the Avion/Air France agreements and to cause Avion in

consequence to terminate the Evergreen/Avion contracts.

Evergreen takes the position that, notwithstanding the foregoing, following the collapse

of negotiations over the agreement by which NexGen would have leased the aircraft defendants

were to purchase directly from Air France directly to Evergreen, Evergreen still expected that

Avion would purchase the aircraft from Air France and offer it for sale to Evergreen according to

the terms of the first Evergreen/Avion contract. However, on June 16, 2010, Air France

apparently having terminated each of its three agreements with Avion, Avion notified Evergreen

in writing that it was terminating all three of the Evergreen/Avion contracts due to the

impossibility of performance.

### III.    Evidentiary Submissions[4]

According to defendants' evidentiary submissions, defendants neither own nor lease any

---

[4] The parties' evidentiary submissions will be considered only to the extent that they may be fit matters for judicial notice or, in the event they are not fit matters for judicial notice, only in connection with defendants' dismissal motion to the extent brought under Federal Civil Procedure Rule 12(b)(2), and only in light of the legal standard governing motions to dismiss for lack of personal jurisdiction.

property in Oregon, have no bank accounts, employees, representatives, or other business presence in Oregon, do not maintain a registered agent for service of process in Oregon and do not pay taxes in Oregon.  Defendants' communications with Evergreen took place mainly over the telephone, and defendants were not in Oregon during any such telephone calls.  Aziz Hassanali, principal of the Anchorage defendants, met representatives of Evergreen on a small number of occasions, each taking place in either New York or Florida.  Farhood Azima, principal of NexGen, met representatives of Evergreen on two occasions, once in Florida and once in McMinnville, Oregon.  The meeting in Oregon was  intended to resolve the parties' disagreements over the parties' contemplated lease agreement, and was unsuccessful.

I take judicial notice that on August 25, 2010, Evergreen filed an action against Avion in this court (the "Evergreen/Avion action"), alleging Avion's liability for breach of contract and for money had and received in connection with Avion's failure to reimburse Evergreen in the amount of the $15 million deposit Evergreen paid pursuant to the three Evergreen/Avion contracts. Evergreen amended its complaint of September 9, 2010, to add an additional cause of action for conversion arising out of the same facts.  On November 17, 2010, Avion having made no appearance in the Evergreen/Avion action, Evergreen moved for entry of default judgment.  On December 1, 2010, Judge Stewart entered an order of default in Evergreen's favor in connection with Evergreen's causes of action against Avion.  Evergreen moved for entry of a money judgment against Avion on January 6, 2011, and on February 22, 2011, Judge Brown entered judgment against Avion in Evergreen's favor in the amount of $15 million plus post-judgment interest.  Evergreen's money judgment against Avion specifies that it was granted on the grounds that Avion was required under the three Evergreen/Avion contracts to reimburse Evergreen in the

amount of the three $5 million down payments Evergreen made to Avion towards the purchase of

the three subject aircraft, and failed to do so.

## ANALYSIS

By and through their motion, defendants primarily challenge this court's personal

jurisdiction over them, pursuant to Federal Civil Procedure Rule 12(b)(2).  In the alternative,

defendants seek dismissal of Evergreen's claims pursuant to Federal Civil Procedure Rule

12(b)(6) on the grounds that Evergreen has failed to plead claims upon which relief can be

granted.

## I.    Motion to Dismiss for Lack of Personal Jurisdiction

"When no federal statute governs personal jurisdiction, the district court applies the law

of the forum state." *Id.*, *citing Panavision Int'l L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir.

1998).  Oregon's long-arm statute creates a standard co-extensive with federal jurisdictional

standards, *see* Or. R. Civ. P. 4L, so a federal court sitting in the District of Oregon may exercise

personal jurisdiction wherever it is possible to do so within the limits of federal constitutional

due process, *see, e.g., Gray & Co. v. Firstenberg Mach. Co.*, 913 F.2d 758, 760 (9th Cir. 1990).

Federal due process jurisprudence requires that, to be subject to the personal jurisdiction

of a federal court, a nonresident defendant must have at least "'minimum contacts'" with the

court's forum state such that "the exercise of jurisdiction 'does not offend traditional notions of

fair play and substantial justice.'" *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801

(9th Cir. 2004), *quoting International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  Two

forms of personal jurisdiction are available for application to a nonresident defendant:  general

personal jurisdiction and specific personal jurisdiction.

A.    **General Personal Jurisdiction**

"For general jurisdiction to exist over a nonresident defendant . . . , the defendant must

engage in continuous and systematic general business contacts . . . that approximate physical

presence in the forum state." *Schwarzenegger*, 374 F.3d at 801, *quoting Helicopteros Nacionales*

*de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984) and *Bancroft & Masters, Inc. v. Augusta*

*Nat'l, Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000).  "This is an exacting standard, as it should be,

because a finding of general jurisdiction permits a defendant to be haled into court in the forum

state to answer for any of its activities anywhere in the world." *Id.*, *citing Brand v. Menlove*

*Dodge*, 796 F.2d 1070, 1073 (9th Cir. 1986).  Here, plaintiffs do not assert that this court could

properly exercise general personal jurisdiction over the defendants, and analysis of plaintiffs'

allegations and of the parties' evidentiary submissions establishes that defendants lack the

continuous and systematic contacts with Oregon that would give rise to general personal

jurisdiction over them in this state.

B.    **Specific Personal Jurisdiction**

The courts of the Ninth Circuit apply a three-pronged test for determining whether, in

connection with a given claim, the exercise of specific personal jurisdiction over a nonresident

defendant is appropriate:

> (1) The non-resident defendant must purposefully direct his activities or
> consummate some transaction with the forum or resident thereof; or perform some
> act by which he purposefully avails himself of the privilege of conducting
> activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's
> forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice,

*i.e.* it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802, *quoting Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987).

The plaintiff bears the burden of satisfying the first two prongs of the test, whereupon the burden

shifts to the defendant to "'present a compelling case' that the exercise of jurisdiction would not

be reasonable." *Id.*, *quoting Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985).

In the context of cases that sound primarily in tort, courts have considered it sufficient to

satisfy the first prong of the test where the only contact a nonresident defendant had with the

forum state was "the 'purposeful direction' of a *foreign* act having *effect* in the forum state."

*Haisten v. Grass Valley Medical Reimbursement Fund, Ltd.*, 784 F.2d 1392, 1397 (9th Cir. 1986)

(emphasis original), *citing Calder v. Jones*, 465 U.S. 783, 789 (1984).  This "'effects' test requires

that the defendant allegedly have (1) committed an intentional act, (2) expressly aimed at the

forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum

state." *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002).  "The requirement is but a

test for determining the more fundamental issue of whether a 'defendant's conduct and connection

with the forum state are such that he should reasonably anticipate being haled into court there.'"

*Id.*, *quoting World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

In *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082 (9th Cir. 2000), the

Ninth Circuit discussed the "express aiming" prong of the effects test as follows:

> In *Calder*, the Supreme Court held that a foreign act that is both aimed at and has
> effect in the forum state satisfies the purposeful availment prong of the specific
> jurisdiction analysis.  To meet the effects test, the defendant must have
> (1) committed an intentional act, which was (2) expressly aimed at the forum
> state, and (3) caused harm, the brunt of which is suffered and which the defendant
> knows is likely to be suffered in the forum state. *See Panavision Int'l, L.P. v.
> Toeppen*, 141 F.3d 1316, 1321 (9th Cir. 1998).  Subsequent cases have struggled

Page 13 - FINDINGS AND RECOMMENDATION

somewhat with *Calder*'s import, recognizing that **the case cannot stand for the broad proposition that a foreign act with foreseeable effects in the forum state always gives rise to specific jurisdiction.** We have said that there must be "something more," but have not spelled out what that something more must be. *See Panavision,* 141 F.3d at 1322.

**We now conclude that "something more" is what the Supreme Court described as "express aiming" at the forum state.** *See Calder,* 465 U.S. at 789. Express aiming is a concept that in the jurisdictional context hardly defines itself. From the available cases, we deduce that **the requirement is satisfied when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state.** For example, in *Calder* itself, the defendants were a reporter and an editor of a nationally-circulated tabloid newspaper whom plaintiff, a well-known California resident, accused of libel. The defendants argued that the alleged wrong had no intended nexus with California and that they should be treated like "a welder employed in Florida who works on a boiler which subsequently explodes in California." *Id.* The Supreme Court rejected this proposed analogy, pointing out that "petitioners are not charged with mere untargeted negligence. Rather, their intentional, and allegedly tortious, actions were expressly aimed at California." *Id.*

Subsequent cases from this circuit bear out the conclusion that "express aiming" encompasses wrongful conduct individually targeting a known forum resident. In *Metropolitan Life Insurance Co. v. Neaves,* 912 F.2d 1062 (9th Cir. 1990), we held that an Alabama resident could be haled into a California court on the basis of a letter she sent to an insurance company representing that she was entitled to an insurance payment that actually belonged to a California resident. We stated that under *Calder,* it was irrelevant where the letter was sent. The critical factor was that in sending the letter, the defendant "was purposefully defrauding [plaintiff] in California." 912 F.2d at 1065. Similarly, in *Brainerd v. Governors of the University of Alberta,* 873 F.2d 1257 (9th Cir. 1989), we held that an Arizona court could exercise specific jurisdiction over Canadian residents who, in response to telephone calls directed to them in Canada, made statements that allegedly defamed a person they knew resided in Arizona. *Id.* at 1259-60. Even though the Canadian defendants had not initiated the telephone calls, the statements they made about the plaintiff during the conversations were not "untargeted negligence" but rather were "performed for the very purpose of having their consequences felt in the forum state." *Id. See also Gordy v. Daily News, L.P.,* 95 F.3d 829, 833 (9th Cir. 1996) (holding that specific jurisdiction existed in light of evidence of "targeting" of the plaintiff, who was a forum resident); *Lake v. Lake,* 817 F.2d 1416, 1422-23 (9th Cir. 1987) (holding that specific jurisdiction existed where defendant performed foreign acts for the purpose of having their

consequences felt in the forum state); *Haisten v. Grass Valley Med. Reimbursement Fund, Ltd.*, 784 F.2d 1392, 1398 (9th Cir. 1986) (finding purposeful availment where forum effect of a foreign act "was not only foreseeable, it was contemplated and bargained for").

The presence of individualized targeting is what separates these cases from others in which we have found the effects test unsatisfied. In *Cybersell*, [*Inc. v. Cybersell, Inc.*, 130 F.3d 414 (9th Cir. 1997),] for example, there was no showing that the defendants even knew of the existence of the plaintiffs, let alone targeted them individually. *See* 130 F.3d at 420. *See also Gordy*, 95 F.3d at 833 (distinguishing certain cases holding that no personal jurisdiction existed under *Calder* on the ground that in those cases targeting was lacking).

*Bancroft & Masters*, 223 F.3d at 1087-1088 (emphasis supplied; modifications original).

The second prong of the specific personal jurisdiction test requires that the plaintiff's claim arise out of the nonresident defendant's forum-related activities. *See Boschetto*, 539 F.3d at 1016. At the third prong of the specific personal jurisdiction test, the burden shifts to the defendant to present a "compelling case" to rebut the presumption that the exercise of specific personal jurisdiction would be reasonable. *See id.*

In determining reasonableness, th[e] [courts of the Ninth] circuit examine[] seven factors: the extent of purposeful interjection; the burden on the defendant to defend the suit in the chosen forum; the extent of conflict with the sovereignty of the defendant's state; the forum state's interest in the dispute; the most efficient forum for judicial resolution of the dispute; the importance of the chosen forum to the plaintiff's interest in convenient and effective relief; and the existence of an alternative forum.

*Shute v. Carnival Cruise Lines*, 897 F.2d 377, 386 (9th Cir. 1990), *citing Federal Deposit Ins. Corp. v. British-American Ins. Co., Ltd.*, 828 F.2d 1439, 1442 (9th Cir. 1987). "The court[s] must balance the seven factors to determine whether the exercise of jurisdiction would be reasonable." *Id.*, *citing British-American*, 828 F.2d at 1442.

It has long been settled law in the Ninth Circuit that "[w]here . . . a plaintiff raises two

separate causes of action, the court must have in personam jurisdiction over the defendant with respect to each claim." *Data Disc, Inc. v. Systems Technology Associates, Inc.*, 557 F.2d 1280, 1289, n. 8 (9th Cir. 1977), *citing* 6 C. Wright & A. Miller, Federal Practice and Procedure § 1588, at p. 816 (1971).  However, in *Data Disc* the Ninth Circuit expressly left open the question whether "if the court determines that there has been a sufficient showing of personal jurisdiction to reach trial with regard to one claim, but not the other," it could ever "be appropriate to assume jurisdiction over the other claim under principles analogous to the doctrine of pendent jurisdiction." *Id.*  I am not aware of any subsequent Ninth Circuit jurisprudence squarely addressing the issue raised and reserved for future decision by the *Data Disc* court.

Although the Ninth Circuit has not yet expressly answered the question whether any form of supplemental specific personal jurisdiction could under any circumstances permit a court to exercise personal jurisdiction over a foreign defendant with respect to a claim that did not arise out of the defendant's contacts with the forum in which the court is located, other circuits have done so.  In 2007, after acknowledging that the question was one of first impression for the court, the Fifth Circuit expressly held that "[t]here is no such thing as supplemental specific personal jurisdiction; if separate claims are pled, specific personal jurisdiction must independently exist for each claim and the existence of personal jurisdiction for one claim will not provide the basis for another claim." *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 275 (5th Cir. 2006), *quoting* 5B C. Wright & A. Miller, Federal Practice and Procedure: Civil 3d § 1351, at 299 n.30 (2004).  Other circuit courts have held similarly, *see, e.g.*, *Phillips Exeter Academy v. Howard Phillips Fund, Inc.*, 196 F.3d 284, 289 (1st Cir. 1999) ("Questions of specific jurisdiction are always tied to the particular claims asserted"), *Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir.

2001) (requiring separate, claim-specific analysis of specific personal jurisdiction as to a given

defendant for each claim asserted against that defendant), and I am unaware of any federal

decision to the contrary. Moreover, to permit the exercise of any form of supplemental specific

personal jurisdiction would effectively swallow the distinction between general and specific

personal jurisdiction, in that the distinction between general and specific personal jurisdiction is

wholly premised on the principle that where a defendant lacks continuous and systematic

contacts with a plaintiff's chosen forum such that it would be reasonable to hale the defendant

into court in that forum on a theory of general personal jurisdiction, a court may only exercise

personal jurisdiction over that defendant as to a claim arising out of conduct of the defendant that

is either purposefully directed at the forum or calculated purposefully to avail the defendant of

the privilege of conducting activities in the forum. I therefore conclude that the Ninth Circuit

would not recognize any form of supplemental specific personal jurisdiction, and recommend

that the court conduct a separate claim-specific analysis of specific personal jurisdiction over the

defendants for each of Evergreen's claims.

### 1.    Intentional Interference with Economic Relations

Evergreen's first claim is for intentional interference with economic relations. In

connection with that claim, Evergreen alleges that the defendants intentionally purchased three

specifically identified aircraft from Air France, with both (i) the knowledge that its purchase of

those aircraft would render performance of the Avion/Air France agreements and, in

consequence, of the Evergreen/Avion contracts, impossible and (ii) the affirmative intent to

interfere in the economic relationship created by the Evergreen/Avion contracts. Evergreen

further alleges that at the time they effected the purchase of the three aircraft from Air France,

defendants knew that Evergreen, a company defendants knew to be headquartered in Oregon, would be deprived of the benefits of the Evergreen/Avion contracts. Evergreen takes the position that, under the *Calder* "effects test" discussed *supra*, the foregoing allegations are sufficient to permit the exercise of specific personal jurisdiction over the defendants in connection with the intentional interference claim.

In *CE Distrib., LLC v. New Sensor Corp.*, 380 F.3d 1107 (9th Cir. 2004), the Ninth Circuit had occasion to illustrate the application of the *Bancroft & Masters* gloss on the *Calder* effects test, within the intentional interference context. In *CE Distrib.*, the Arizona-headquartered plaintiff and the out-of-state defendant were business rivals, each in the business of importing and distributing electronic products. *See CE Distrib.*, 380 F.3d at 1110. The plaintiff was the exclusive distributor of Jensen speakers, which are produced in Italy. *See id.* The defendant had been aware since at least 1999 that the plaintiff was the beneficiary of an exclusive distribution relationship with the Italian manufacturer of the speakers. *See id.* From 1999 to 2001, the defendant purchased Jensen speakers from the plaintiff for resale to its customers in the United States. *See id.* In 2001, however, after first unsuccessfully approaching the Italian manufacturer of the speakers in an effort to obtain the speakers directly from the manufacturer, the defendant successfully circumvented the plaintiff's exclusive distributor arrangement by obtaining Jensen speakers from a third-party distributor located outside the United States, and then reselling them within the United States. *See id.* The plaintiff filed a claim for intentional interference with economic relations against the defendant in the District of Arizona. *See id.* at 1109. Called upon to analyze whether the defendant could be subject to specific personal jurisdiction in Arizona on the basis of its conduct in intentionally purchasing

Page 18 - FINDINGS AND RECOMMENDATION

Jensen speakers from a distributor other than the plaintiff for resale in the United States, the *CE*

*Distrib.* court first cited *Bancroft & Masters, supra*, for the proposition that "the 'express aiming'

requirement of the effects test is met 'when the defendant is alleged to have engaged in wrongful

conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state,'" *id.*

at 1111, *quoting Bancroft & Masters*, 223 F.3d at 1087, and then reasoned as follows:

> Here, [defendant] engaged in the Jensen transactions outside Arizona, but it is
> reasonable to infer that [defendant] had every reason to know that the effect of the
> transactions would resonate in Arizona. [Plaintiff] alleges that it had a previous
> business relationship with [defendant] spanning a period of several years.
> [Defendant] was aware that [plaintiff] was based in Arizona and was the sole
> United States distributor of Jensen speakers. [Plaintiff] alleges that [defendant]'s
> actions were intended to undermine [plaintiff]'s status as the sole distributor of
> Jensen speakers in the United States. In the face of [defendant]'s awareness of the
> harm to [plaintiff]'s exclusive business located in Arizona, and because of the
> intentional nature of [defendant]'s action, the first (intentional act) and second
> (aimed at Arizona) requirements for specific personal jurisdiction are met.

*Id.* at 1111-1112. Thus, *CE Distrib.* suggests that where a defendant is alleged to have intended

the consequence of impairing a specific, identified business relationship and thereby foreseeably

and intentionally causing harm to be suffered by one of the parties to the relationship within the

forum state, such allegations are sufficient to satisfy the requirements of the *Calder* effects test

for establishing purposeful direction.

Here, Evergreen's allegations in support of its intentional interference claim meet the

effects test standard as illustrated in *CE Distrib.* Like the *CE Distrib.* defendant, defendants here

were at all material times aware of the plaintiff's contractual business relationship with Avion,

and are alleged to have taken deliberate action intentionally to defeat the purpose of that

economic relationship, with the alleged consequence that the economic relationship failed to the

plaintiff's harm within the forum state. As a result, I conclude that Evergreen's allegations are

Page 19 - FINDINGS AND RECOMMENDATION

sufficient to satisfy the purposeful direction prong of the specific personal jurisdiction test.

As to the second prong of the test, requiring that the plaintiff's claim against the defendants arise out of the defendants' purposefully forum-directed conduct, I agree with Evergreen that, as its intentional interference claim is alleged, the claim clearly arises out of defendants' alleged conduct in intentionally impairing the economic relations memorialized in the Evergreen/Avion contracts by intentionally rendering performance of those contracts impossible. It is therefore appropriate to consider the third prong of the test, at which the burden shifts to the defendants to rebut the presumption that the exercise of specific personal jurisdiction over them in connection with the intentional interference claim would be reasonable.

The first of the seven reasonableness factors the courts of the Ninth Circuit consider in connection with the reasonableness prong of the specific personal jurisdiction test is the extent of defendants' purposeful interjection into Oregon. Defendants are alleged to have initiated contact with the plaintiff, an Oregon company headquartered in Oregon, for the purpose of negotiating a series of three business transactions, and are moreover alleged to have intentionally poached the plaintiff's business opportunities with the knowledge that to do so would cause Evergreen to experience harm in Oregon. Assuming the truth of Evergreen's allegations as is required at this stage of these proceedings, this factor mitigates in favor of the conclusion that exercise of specific personal jurisdiction over the defendants in connection with the intentional interference claim would be reasonable.

The second factor is the burden that the defendants would be required to bear if required to defend Evergreen's claim in Oregon. Defendants assert that litigation in Oregon would be extraordinarily burdensome, whereas Evergreen contends that defendants' principals travel with

Page 20 - FINDINGS AND RECOMMENDATION

such frequency that litigation in a distant forum would not be significantly burdensome to them. Weighing the parties' submissions, I conclude that this factor weighs against the reasonableness of exercising specific personal jurisdiction over the defendants in Oregon.

I agree with the parties that the third factor, the extent of conflict with the sovereignty of the defendant's state, in this case New York, is not implicated here. I therefore conclude that the third factor is a wash.

As to the fourth factor, the extent of Oregon's interest in the parties' dispute, I find that Oregon does have a cognizable interest in resolving the action. Assuming the truth of Evergreen's allegations, an Oregon resident has been deprived of the benefit of three bargains, and will not foreseeably have an opportunity to replicate them. If Evergreen's allegations are ultimately proven acurate, Oregon will have an interest in seeing Evergreen made whole. This factor therefore mitigates in favor of concluding that exercise of personal jurisdiction over these defendants in connection with the intentional interference claim would be reasonable.

The fifth factor requires the court to determine the most efficient forum for resolution of the parties' dispute. Here, the defendants are all located in New York, and the plaintiff in Oregon. In addition to evidence and witnesses located in Oregon and New York, additional material evidence and witnesses may be located in France and in Iceland. Following analysis of the parties' submissions, I conclude that there would likely be no efficiency differential between the Oregon and New York fora, and therefore find that the fifth factor is a wash.

The sixth factor obliges the court to consider the importance of the chosen forum to the plaintiff's interest in convenient and effective relief. Evergreen has chosen Oregon as clearly the most convenient forum available to it, and it is likely that the choice of New York as an

alternative forum would in some sense impair the convenience Evergreen enjoys in its access to the courts in this state. However, there is no reason to believe that either forum would in any sense offer less effective relief than the other. I therefore conclude that the sixth factor mitigates mildly in favor of the conclusion that exercise of personal jurisdiction would be reasonable.

By contrast, the final factor, the existence of an alternative forum, mitigates mildly against the reasonableness of haling defendants into court in Oregon. New York is an available alternative forum within which personal jurisdiction could clearly be exercised over the defendants, and all relief potentially available to Evergreen in this forum would be equally available in New York.

For the foregoing reasons, I conclude that the seven factors are roughly equally balanced. Because, however, it is defendants' affirmative burden to make a "compelling case" to rebut the presumption that exercise of specific personal jurisdiction over them would be reasonable, I find that defendants have not met their burden. Defendants' motion to dismiss for lack of personal jurisdiction should therefore be denied as to Evergreen's claim for intentional interference with economic relations.

### 2.   Unjust Enrichment

Evergreen's second claim is for unjust enrichment. In support of that claim, Evergreen alleges that by applying the $12 million total deposit paid by Avion to Air France toward their own purchases, the defendants were able to secure a price-per-aircraft from Air France that was $4 million less than it would have been absent Avion's $12 million deposit.[5] Evergreen further

---

[5] As noted above, it is unclear from Evergreen's briefing whether the $4-million-per-aircraft price reduction that allegedly resulted from defendants' arrogation of Avion's deposit to their own credit is the same as the approximately $4-million-per-aircraft price reduction that

alleges that between the dates on which Avion paid Air France a $12 million total deposit toward

the purchase of the three aircraft and the dates on which defendants purchased the three aircraft

directly from Air France, Evergreen paid Avion a deposit of $15 million towards the purchase of

the same three aircraft from Avion. Evergreen takes the position that in light of the deposit paid

by Evergreen to Avion, the deposit Avion paid to Air France was in some sense Evergreen's;

moreover, Evergreen expressly takes the position that, in paying a purchase price for each of the

three aircraft that had been reduced in the amount of Avion's $12 million deposit to Air France,

defendants unjustly enriched themselves, not in the amount of $12 million, but in the amount of

$15 million. Evergreen alleges that defendants' misappropriation of Avion's deposit to Air

France for defendants' own benefit was knowing and intentional. Evergreen takes the position

that, under *Calder*, the foregoing allegations are sufficient to permit the exercise of specific

personal jurisdiction over the defendants in connection with the unjust enrichment claim.

Assuming the truth of Evergreen's allegations, defendants intended to enrich themselves

at Evergreen's expense, knowing that Evergreen would thereby be harmed and would suffer the

harm in Oregon. Under the Ninth Circuit precedent discussed *supra*, Evergreen's allegations are

therefore sufficient to satisfy the purposeful direction prong of the specific personal jurisdiction

test in connection with the unjust enrichment claim. Moreover, because it is clear that

Evergreen's unjust enrichment claim arises out of or relates to defendant's alleged purposefully

forum-directed conduct, the second prong of the specific personal jurisdiction test is likewise

satisfied. Finally, for the same reasons discussed *supra* in connection with defendant's motion to

---

Evergreen alleges defendants failed to pass on to Evergreen in the form of a reduced monthly
lease payment.

dismiss Evergreen's intentional interference claim for lack of personal jurisdiction, defendants

have failed to meet their burden to make a compelling case that it would be unreasonable to hale

them into court in Oregon.  Defendants' motion to dismiss for lack of personal jurisdiction should

therefore be denied as to Evergreen's claim for unjust enrichment.

## II.    Motion to Dismiss for Failure to State a Claim

As noted above, in the alternative to their motion to dismiss for lack of personal

jurisdiction, defendants move to dismiss each of Evergreen's causes of action for failure to state a

claim.

### A.    Intentional Interference with Economic Relations

Under Oregon law:

> To state a claim for intentional interference with economic relations, a plaintiff
> must allege:  (1) the existence of a professional or business relationship; (2)
> intentional interference with that relationship; (3) by a third party; (4)
> accomplished through improper means or for an improper purpose; (5) a causal
> effect between the interference and damage to the economic relations; and (6)
> damages.

*Northwest Natural Gas Co. v. Chase Gardens, Inc.*, 328 Or. 487, 498 (1999), *citing McGanty v.*

*Staudenraus*, 321 Or. 532, 535 (1995).

Moreover, "[d]eliberate interference alone does not give rise to tort liability."  *Id.*; *see*

*also Top Service Body Shop v. Allstate Ins. Co.*, 283 Or. 201, 209-10 (1973) ("[A] claim [of tort

liability for intentional interference with a contractual or other economic relations] is made out

when interference resulting in injury to another is wrongful by some measure beyond the fact of

the interference itself.  Defendant's liability may arise from improper motives or from the use of

improper means. They may be wrongful by reason of a statute or other regulation, or a

recognized rule of common law, or perhaps an established standard of a trade or profession.").

The *Northwest Natural Gas* court specified that:

> To be entitled to reach a jury, a plaintiff must not only prove that defendant intentionally interfered with h[er] business relationship but also that defendant had a duty of non-interference; *i.e.*, that [it] interfered for an improper purpose rather than for a legitimate one, or that defendant used improper means which resulted in injury to plaintiff. Therefore, a case is made out which entitles plaintiff to go to a jury only when interference resulting in injury to another is wrongful by some measure beyond the fact of the interference itself.

*Northwest Natural Gas*, 328 Or. at 498 (citations, internal quotation marks omitted). The court further explained that:

> [I]f liability in tort is to be based on an actor's purpose, then the purpose must be to inflict injury on the plaintiff "as such." And, **if liability in tort is based on an actor's means, then the means must violate some objective, identifiable standard, such as a statute or other regulation, or a recognized rule of common law**, or, perhaps, an established standard of a trade or profession.

*Id.* (citations omitted; emphasis supplied). Under Oregon law, therefore, a third-party's interference with another party's economic relations is not improperly motivated when its purpose is the pursuit of the third parties' own interests. *See, e.g., Eusterman v. Northwest Permanente, P.C.*, 204 Or. App. 224, 238 (2006) ("not improper" for a corporate party's actions to be motivated to maximize its profits); *Top Service*, 283 Or. at 212 (not improper for a party to be motivated to pursue its own business purposes "as it saw them").

As noted above, in support of its intentional interference claim, Evergreen alleges that it had entered into three separate contracts with Avion for the purchase of three specifically identified aircraft, that defendants' at all material times were aware of the existence and gravamen of the three Evergreen/Avion contracts, that defendants were further aware that the three aircraft identified in the Evergreen/Avion contracts were also the subject to three separate

Page 25 - FINDINGS AND RECOMMENDATION

agreements between Avion and Air France for Air France to sell those same aircraft to Avion, and that defendants nevertheless intentionally purchased those same specific aircraft directly from Air France, with both (i) the knowledge that its purchase of those aircraft would render performance of the Avion/Air France agreements and, in consequence, of the Evergreen/Avion contracts, impossible and (ii) the affirmative intent to interfere in the economic relationship created by the Evergreen/Avion contracts. Evergreen further alleges that at the time they effected the purchase of the three aircraft from Air France, defendants knew that Evergreen, a company defendants knew to be headquartered in Oregon, would be deprived of the benefits of the Evergreen/Avion contracts. Evergreen has therefore clearly alleged the existence of a business relationship (that memorialized in the Evergreen/Avion contracts), with which defendants intentionally interfered (by purchasing the subject aircraft with knowledge that to do so would render performance of the Evergreen/Avion contracts impossible) to Evergreen's detriment (depriving Evergreen of the benefits of its bargains with Avion). It is moreover clear that defendants were third parties to the Evergreen/Avion relationship at all material times. In moving for dismissal of Evergreen's claim, defendants primarily challenge the sufficiency of Evergreen's allegations that defendants' interference was accomplished through improper means or for improper purpose, and that defendants' interference was the cause of Evergreen's damages.

As to the improper means or improper purpose element of Evergreen's claim, although Evergreen does attempt to argue that defendants were motivated by the improper purpose to acquire the subject aircraft for their own benefit, I agree with defendants that, as a matter of law, such a business purpose is not improper for purposes of the tort of intentional interference. *See Eusterman*, 204 Or. App. at 238; *Top Service*, 283 Or. at 212. However, in addition to arguing

improper purpose, Evergreen also argues improper means: specifically, that in effecting the purchase of the aircraft, defendants converted to their own benefit a $12 million deposit paid for those same aircraft by Avion, apparently without either Avion's consent or Evergreen's. While (as will be discussed in further detail below) there is some question whether defendants' alleged unjust enrichment in the amount of that deposit was at Evergreen's or at Avion's expense, it is immaterial for purposes of the intentional interference tort whether defendants converted funds belonging to Evergreen or to Avion; in either event, such conversion was allegedly improper. *See, e.g., Northwest Natural Gas*, 328 Or. at 498 (means are "improper" for purposes of the intentional interference tort where the means employed "violate some objective, identifiable standard, such as . . . a recognized rule of common law"); *Top Service*, 283 Or. at 210, n. 11 (improper means can support an intentional interference claim even if directed toward a third party and even if not actionable by that third party). I therefore conclude that Evergreen has adequately pled that defendants accomplished their interference via improper means.

As to the element of causation, defendants argue that their alleged interference cannot have been the cause of Evergreen's damages, because at the time the interference allegedly occurred, Avion was financially incapable of performance on its obligations under the three Avion/Air France arrangements, and therefore unable to perform its obligations under the Evergreen/Avion contracts. I agree with defendants that, if it were established that Avion was incapable of performing whether or not defendants purchased the aircraft, no cause of action for intentional interference would lie. However, Evergreen has not alleged that Avion was incapable of performing its obligations, but rather that Avion was experiencing financial difficulties calling its ability to perform into question. According to Evergreen's allegations, at the time defendants

purchased the aircraft from Air France, Avion had obtained Air France's agreement to forbear from declaring Avion in default, and Avion was making continuing efforts to obtain the financing requisite to its performance of its obligations.  Evergreen has therefore not pled the impossibility of Avion's performance.

 For the foregoing reasons, I conclude that Evergreen has adequately pled the elements of its claim for intentional interference.  Defendants' motion to dismiss should therefore be denied as to that claim.

### B. Unjust Enrichment

 Under Oregon law, the elements of a claim for unjust enrichment "are a benefit conferred, awareness by the recipient that a benefit has been received and, under the circumstances, [that] it would be unjust to allow retention of the benefit without requiring the recipient to pay for it." *Edward D. Jones & Co. v. Mishler*, 161 Or. App. 544 (1999) (internal quotation marks omitted), *quoting Jaqua v. Nike, Inc.*, 125 Or. App. 294, 298 (1993).  The Oregon courts have held that it is unjust to allow retention of such a benefit when at least one of the following is true:

 (1) the plaintiff had a reasonable expectation of payment;

 (2) the defendant should reasonably have expected to pay; or

 (3) society's reasonable expectations of security of person and property would be defeated by non-payment.

*Jaqua*, 125 Or. App. at 298, *quoting* 1 Corbin, Contracts § 19A.

 Here, as noted above, in support of its unjust enrichment claim Evergreen alleges that by applying the $12 million total deposit paid *by Avion* to Air France toward their own purchases, the defendants were able to secure a price-per-aircraft from Air France that was $4 million less

Page 28 - FINDINGS AND RECOMMENDATION

than it would have been absent *Avion*'s $12 million deposit. Evergreen further alleges that, after Avion paid its deposit to Air France but before defendants purchased the aircraft from Air France, Evergreen paid Avion a deposit of $15 million towards the purchase of the same three aircraft from Avion. Evergreen alleges that defendants subsequently purchased the three aircraft directly from Air France, paying $12 million less than Air France's asking price due to receiving credit for Avion's deposit.

Setting entirely aside Evergreen's illogical contention that defendants could somehow thereby have enriched themselves in the amount of Evergreen's $15 million payment to Avion, rather than in the amount of the $12 million deposit by which their purchase price was allegedly reduced, the problem with Evergreen's legal theory is that Evergreen has pled defendants' unjust enrichment at *Avion*'s expense. Defendants' price for the aircraft they purchased from Air France was allegedly reduced by the amount of *Avion*'s deposit to Air France, not by the amount of Evergreen's deposit to Avion. Furthermore, the mere fact that Evergreen allegedly paid $15 million in deposit to Avion after Avion had made a down payment to Air France in the amount of $12 million is far from sufficient to establish that Evergreen had any ownership interest in the moneys held by Air France. Evergreen has not alleged that it was in any way in privity with Air France in its dealings with Avion, or that Avion had expressly or implicitly assigned to Evergreen its rights in the $12 million deposit to Air France. In the absence of any allegation on the basis of which a trier of fact could conclude or infer that the $12 million by which defendants' purchase price was reduced belonged to Evergreen, Evergreen has not stated a viable claim for unjust enrichment (or at least, has stated no such claim with respect to which it has standing to sue).

In addition, I find the theory that defendants could be liable to Evergreen for unjust enrichment troubling in light of the fact that Evergreen has already obtained a $15 million money judgment against Avion on a theory of unjust enrichment. While I do not find at this time that Evergreen is thereby estopped from arguing that it was defendants rather than Avion who enriched themselves at Evergreen's expense by benefitting from Evergreen's $15 million deposit to Avion, Evergreen's successful prosecution of an unjust enrichment claim against Avion raises numerous material questions, including whether Evergreen's piecemeal, iterative approach to prosecuting its unjust enrichment claim has left one or more essential parties out of one or both of its legal proceedings, and whether the two legal theories it has espoused in the two actions are wholly irreconcilable.

For the foregoing reasons, I recommend that Evergreen's claim for unjust enrichment be dismissed for failure to state a claim. Because, however, it is not entirely clear that amendment of the allegations in support of the claim would be futile, I recommend that the claim be dismissed without prejudice.

## CONCLUSION

For the reasons set forth above, defendants' motion to dismiss should be granted in part and denied in part as follows: denied to the extent defendants seek dismissal of Evergreen's claims under Federal Civil Procedure Rule 12(b)(2) for lack of personal jurisdiction, denied to the extent defendants seek dismissal of Evergreen's intentional interference claim under Federal Civil Procedure Rule 12(b)(6) for failure to state a claim, and granted to the extent defendants seek dismissal of Evergreen's unjust enrichment claim under Rule 12(b)(6) for failure to state a claim. Evergreen's unjust enrichment claim should be dismissed without prejudice.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

Dated this 9th day of July, 2012.

Honorable Paul Papak
United States Magistrate Judge

Page 31 - FINDINGS AND RECOMMENDATION