IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EVERGREEN INTERNATIONAL
AIRLINES, INC.,

        Plaintiff,

                                   3:11-CV-1416-PK

v.                                   OPINION AND
                                   ORDER

ANCHORAGE ADVISORS, LLC,
ANCHORAGE CAPITAL GROUP,
LLC, and NEXGEN AVIATION
CAPITAL, LLC,

        Defendants.

PAPAK, Magistrate Judge:

        Plaintiff Evergreen International Airlines, Inc. ("Evergreen"), filed this action against

defendants Anchorage Advisors, LLC, Anchorage Capital Group, LLC, and Nexgen Aviation

Capital, LLC,[1] on November 22, 2011.  Evergreen amended its complaint effective August 1,

2013.  By and through its amended complaint, Evergreen alleges defendants' liability for

---

    [1] Anchorage Capital Group, LLC, is apparently the successor in interest to Anchorage
Advisors, LLC, suggesting that the latter entity may no longer be in existence.  Nevertheless,
counsel for defendants purports to represent all three named defendants.

Page 1 - OPINION AND ORDER

intentional interference with business relations, breach of fiduciary duty, and conspiracy, each of

its causes of action arising out of defendants' conduct in purchasing three aircraft from third party

Air France that Evergreen had been attempting to purchase in its own behalf, and in reselling

those aircraft to third party National Air Cargo ("National") rather than leasing them to Evergreen

pursuant to the parties' agreement.  This court has subject-matter jurisdiction over Evergreen's

claims based on the complete diversity of the parties and the amount in controversy.

Evergreen's amended complaint is currently under seal, pursuant to the parties' stipulation

that Evergreen would file the complaint under seal, and that defendants would have until August

9, 2013, to move for an order to maintain the seal.  Now before the court is defendants'

contemplated motion (#67) to maintain the seal currently shielding the amended complaint from

public scrutiny or, in the alternative, to require Evergreen either to redact or to remove from the

amended complaint certain specified allegations of fact that defendants characterize as

disclosures of its confidential information, before the seal is lifted.  I have considered the motion,

oral argument on behalf of the parties, and all of the pleadings and papers on file.  For the

reasons set forth below, defendants' motion is granted in part and denied in part as discussed

below.

## LEGAL STANDARD

The courts of the Ninth Circuit generally apply a "compelling reasons" standard when

deciding a party's motion to shield judicial records from public scrutiny:

> A party seeking to seal a judicial record . . . bears the burden of overcoming th[e]
> strong presumption [in favor pf public access to judicial records and documents]
> by meeting the "compelling reasons" standard. *Foltz* [*v. State Farm Mutual Auto
> Insurance Company*], 331 F.3d [1122,] 1135 [(9th Cir. 2003)].  That is, the party
> must "articulate compelling reasons supported by specific factual findings," *id.*

(*citing San Jose Mercury News, Inc. v. U.S. Dist. Ct.*, 187 F.3d 1096, 1102-03 (9th Cir. 1999)), that outweigh the general history of access and the public policies favoring disclosure, such as the "'public interest in understanding the judicial process.'" *Hagestad* [*v. Tragesser,*] 49 F.3d [1430,] 1434 [(9th Cir. 1995)] (*quoting EEOC v. Erection Co.*, 900 F.2d 168, 170 (9th Cir. 1990)). In turn, the court must "conscientiously balance the competing interests" of the public and the party who seeks to keep certain judicial records secret. *Foltz*, 331 F.3d at 1135. After considering these interests, if the court decides to seal certain judicial records, it must "base its decision on a compelling reason and articulate the factual basis for its ruling, without relying on hypothesis or conjecture." *Hagestad*, 49 F.3d at 1434 (*citing Valley Broad. Co. v. United States Dist. Court*, 798 F.2d 1289, 1295 (9th Cir. 1986)).

In general, "compelling reasons" sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such "court files might have become a vehicle for improper purposes," such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets. *Nixon* [*v. Warner Communs., Inc.*], 435 U.S. [589], 598 [(1978)]; accord *Valley Broadcasting Co.*, 798 F.2d at 1294. The mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records. *Foltz*, 331 F.3d at 1136.

*Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1178-1179 (9th Cir. 2006) (internal modifications omitted). In determining whether compelling reasons exist for overriding the common-law right of access to judicial documents, "courts should consider all relevant factors," including "the public interest in understanding the judicial process and whether disclosure of the material could result in improper use of the material for scandalous or libelous purposes or infringement upon trade secrets." *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003), *quoting Hagestad v. Tragesser*, 49 F.3d 1430, 1434 (9th Cir. 1995). "After taking all relevant factors into consideration, the district court must base its decision on a compelling reason and articulate the factual basis for its ruling, without relying on hypothesis or conjecture." *Id.*, *quoting Hagestad*, 49 F.3d at 1434.

Page 3 - OPINION AND ORDER

Where, however, the judicial records in question are unrelated or only tangentially related to the causes of action at issue in the litigation, a party seeking to shield judicial records from public scrutiny need only make a particularized showing of good cause, rather than of compelling reasons, for imposition of a seal. *See Kamakana*, 447 F.3d at 1179-1180, *citing Foltz*, 331 F.3d at 1135; *Phillips v. General Motors Corp.*, 307 F.3d 1206, 1213 (9th Cir. 2002).

## FACTUAL BACKGROUND

### I.    The Parties

Plaintiff Evergreen is an Oregon corporation with its principal place of business in McMinnville, Oregon.  Evergreen is in the business of transporting cargo and passengers by air.

Defendant Anchorage Advisors, LLC, is (or was) a Delaware limited liability company with its principal place of business in New York, New York.  Defendant Anchorage Capital Group, LLC, the successor-in-interest to Anchorage Advisors, LLC, is likewise a Delaware limited liability company with its principal place of business in New York, New York. Defendant NexGen Aviation Capital, LLC, is a Delaware limited liability company with its principal place of business in Bedford, New York.  The defendants are investment firms specializing in the aviation industry.

### II.    Procedural History

Evergreen filed its complaint in this action on November 22, 2011.  Following exchange of discovery with defendants, Evergreen moved unopposed for leave to file an amended complaint on July 31, 2013, pursuant to the parties' stipulation that Evergreen would "preliminarily file the First Amended Complaint under seal to permit Defendants an opportunity to present to the Court Defendants' argument that the First Amended Complaint should be

Page 4 - OPINION AND ORDER

redacted or maintained under seal," which defendants agreed to do by not later than August 9,

2013. This court granted Evergreen's motion on August 1, 2013, expressly stating that

"Defendants will have until 8/9/2013, to file a response to the First Amended Complaint, as well

as any motion to redact or maintain the First Amended Complaint under seal." Defendants

timely filed the motion now before the court on August 9, 2013.

III.    **Allegations Within the Scope of Defendants' Motion**

The allegations defendants seek to shield from public scrutiny are as follows:

- the dollar amount of the profit defendants allegedly earned on the complained-of series of transactions, *see* Amended Complaint, ¶¶ 15, 32, 33(k), 77, 78, 107;

- the proposed per-aircraft purchase price allegedly discussed between defendants and Air France, *see* Amended Complaint, ¶¶ 39, 48, 52, 56;

- the actual price allegedly paid by defendants to Air France for the subject aircraft, either expressed as a per-aircraft price or as an aggregate price, *see* Amended Complaint, ¶¶ 59, 60, 61, 78;

- the per-month, per-aircraft rental amount Evergreen would allegedly have been obliged to pay to defendants under the parties' letter of intent had defendants not sold the subject aircraft to National, *see* Amended Complaint, ¶¶ 52, 62;

- the price defendants allegedly obtained on reselling the subject aircraft to National, *see* Amended Complaint, ¶¶ 76, 80;

- the alleged dollar amount of a payment from defendants to third-party Paul Sawhny in connection with his role in assisting defendants in finding an alternative purchaser for the subject aircraft, *see* Amended Complaint, ¶¶ 33(f), 73, 77;

Page 5 - OPINION AND ORDER

- the alleged payment from defendants to Sawhny in connection with his role in assisting defendants in finding an alternative purchaser for the subject aircraft, expressed as a percentage of the gross sale price of the subject aircraft to National, *see* Amended Complaint, ¶ 73; and

- the alleged dollar amount of payments from defendants to Evergreen's brokers, third parties Brian D. Maurer and William L. McElfresh, in connection with their role in facilitating the sale of the subject aircraft to a party other than Evergreen, expressed either as a per-aircraft and per-broker payment or as an aggregate quantity, *see* Amended Complaint, ¶¶ 33(g), 74.

## ANALYSIS

Defendants take the position that all of the alleged facts they seek to shield from public scrutiny constitute defendants' proprietary trade secret information, giving rise both to good cause and to compelling reasons for imposition of the requested seal. Specifically, defendants take the position that the prices they pay on the purchase of aircraft, the prices they receive on the resale of such aircraft, and the profits they earn on such combinations of transactions, together with any other information that may be used to derive the amounts of such prices or profits, are treated as trade secrets within their industry.

A preliminary question for the court to resolve is whether in fact such information constitutes a trade secret. Oregon has adopted the Uniform Trade Secrets Act, pursuant to which a trade secret is defined as:

> information, including a drawing, cost data, customer list, formula, pattern, compilation, program, device, method, technique or process that:

Page 6 - OPINION AND ORDER

(a)     Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and

(b)     Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Or. Rev. Stat. 646.461(4). Although this definition is expressly applicable only to the provisions of the statutory scheme itself, I take it to accurately set forth the meaning generally intended by the term "trade secret."

Within most industries, the strategy of buying low and selling high does not derive independent economic value from being kept secret. Although the parties here have provided no evidence regarding the nature of the industry within which defendants operate, I take judicial notice that the business model defendants appear to work within is one of pure arbitrage: to maximize profits on the purchase and resale of used aircraft. Within a pure arbitrage industry, in which the maximization of resale profit is the entirety of the business model, I agree with defendants that purchase- and resale-price information, and the profits derived therefrom, could constitute information deriving independent value from being unknown to other actors within the same industry, and therefore could constitute defendants' proprietary trade secret information. Because the price defendants paid to Air France for the subject aircraft can be derived from the per-month, per-aircraft rental amount Evergreen would allegedly have been obliged to pay to defendants and from the terms of the parties' letter of intent, the rental amount Evergreen could have expected to pay for lease of the aircraft from defendants could likewise constitute a trade secret proprietary to the defendants.

By contrast, the payments defendants allegedly made to Evergreen's brokers Maurer and

McElfresh do not appear on a first-pass analysis to constitute information deriving independent value from being kept secret. Moreover, while defendants assert that the price and profit information the confidentiality of which they seek to maintain may be derived from the dollar amounts of those payments, there does not appear to be any basis in evidence or in logic for that assertion. The payments to Maurer and McElfresh are not alleged to have been calculated on the basis of any specified percentage of the price received by defendants on the resale of the aircraft to National, and the payments appear furthermore to have been extraordinary in nature, and not to constitute standard commission payments the percentage basis for which might be calculated by reference to prevalent industry norms. I therefore find that the current evidentiary record provides no support for the conclusion that the alleged payments to Maurer and McElfresh could constitute trade secret information.

Similarly, the dollar amount of the payment made to Sawhny is not itself a trade secret. Unlike the payments allegedly made to Maurer, and McElfresh, however, the payment made to Sawhny is alleged to have been calculated on the basis of a percentage or percentage range. *See* Amended Complaint, ¶ 73. Taken together, the dollar amount of the payment to Sawhny and the expression of that amounts as a percentage of the sale price defendants obtained from National could, to the same extent as the resale price itself, constitute a trade secret proprietary to the defendants. The current evidentiary record does not support the conclusion that either piece of information could constitute a trade secret in the absence of the other.

A second preliminary question for the court to resolve is the legal standard applicable to defendants' motion. As noted above, where information relates directly to causes of action at issue in a lawsuit, the federal courts apply a compelling reasons standard to a motion to seal such

information, whereas if the subject information is unrelated or only tangentially related to causes

of action at issue, a good cause standard controls. Here, the prices defendants negotiated (*see*

Amended Complaint, ¶¶ 39, 48, 52, 56) and actually paid to Air France for the purchase of the

subject aircraft (*see* Amended Complaint, ¶¶ 59, 60, 61, 78) and the per-month, per-aircraft rental

amount Evergreen would allegedly have been obliged to pay to defendants under the parties'

letter of intent had defendants not sold the subject aircraft to National (*see* Amended Complaint,

¶¶ 52, 62) are plainly and directly related to Evergreen's asserted causes of action and/or to

calculation of Evergreen's asserted damages. In consequence, the compelling reasons standard

rather than the good cause standard governs defendants' motion to the extent it addresses those

three categories of information. *See Kamakana*, 447 F.3d at 1179-1180; *see also, e.g., Phillips*,

307 F.3d at 121; *Foltz*, 331 F.3d at 1135; *Hagestad*, 49 F.3d at 1434; *Pintos v. Pac. Creditors*

*Ass'n*, 605 F.3d 665, 678 (9th Cir. Cal. 2010); *Krause v. Nev. Mut. Ins. Co.*, Case No.

2:13-cv-00976- APG-CWH, 2013 U.S. Dist. LEXIS 99087, *11-15 (D. Nev. July 16, 2013);

*Basaraba v. Greenberg*, 2013 U.S. Dist. LEXIS 121260, *4-6 (C.D. Cal. 2013). However, to the

extent the motion addresses the remaining categories of information – the dollar amount of the

profit defendants allegedly earned on the complained-of series of transactions, the price

defendants allegedly obtained on reselling the subject aircraft to National, the alleged dollar

amount of defendants' payment to Sawhny, the percentage of the resale price to National that the

payment to Sawhny allegedly represented, and the dollar amounts of defendants' alleged

payments to Maurer and McElfresh – because the subject information relates only tangentially to

Evergreen's causes of action, the motion must be decided under a good cause standard. *See*

*Kamakana*, 447 F.3d at 1179-1180; *see also, e.g., Phillips*, 307 F.3d at 121; *Foltz*, 331 F.3d at

Page 9 - OPINION AND ORDER

1135; *Hagestad*, 49 F.3d at 1434; *Pintos*, 605 F.3d at 678.

I.    **Defendants' Motion to the Extent it Addresses Information Directly Related to Evergreen's Causes of Action**

To the extent defendants' motion addresses the prices defendants negotiated and/or actually paid to Air France for the purchase of the subject aircraft and/or the per-month, per-aircraft rental amount Evergreen would allegedly have consequently been obliged to pay to defendants under the parties' letter of intent had defendants not sold the subject aircraft to National rather than lease them to Evergreen, it is defendants' burden to establish compelling reasons why that information should be shielded from public scrutiny. As noted above, the subject information is all potentially trade secret information. The court must determine whether defendants have met their burden to establish that the information is in fact trade secret information under all of the relevant circumstances presented here.

The parties have offered no evidence and very little guidance as to the circumstances under which price or profit information may constitute a trade secret within defendants' industry. In particular, although Evergreen asserts that price and profit information regarding a transaction more than three years in the past has little current economic value and defendants assert in their turn that such information retains its economic value apparently indefinitely, no party offers any expert opinion or other competent evidence bearing on the question. Given the nature of defendants' industry, and in the absence of evidence tending to establish either that price or profit information ceases to derive economic value within defendants' industry as a result of the passage of time or that the price and/or profit information at issue here has in fact lost the economic value it initially derived from being unknown to defendants' competitors, I conclude that defendants

have minimally satisfied their burden to establish that the subject information is a trade secret, and that Evergreen has failed to offer evidence calling that conclusion into material question. As noted above, "the use of records to . . . release trade secrets" may be a compelling ground for rebutting the presumption of public access to judicial records. *Kamakana*, 447 F.3d at 1179.

Weighing defendants' interest in maintaining the confidentiality of their trade secrets against the public's interest in understanding the judicial process, and noting that the proposed redactions would shield only a limited amount of information from public scrutiny without thereby rendering Evergreen's allegations unintelligible or incoherent, I find that defendants have satisfied the applicable compelling reasons standard. In consequence, defendants' motion is granted as set forth below to the extent the motion addresses the prices defendants negotiated and actually paid to Air France for the purchase of the subject aircraft and the per-month, per-aircraft rental amount Evergreen would allegedly have been obliged to pay to defendants under the parties' letter of intent had defendants not sold the subject aircraft to National.

## II.   Defendants' Motion to the Extent it Addresses Information Only Tangentially Related to Evergreen's Causes of Action

To the extent defendants' motion addresses the dollar amount of the profit defendants allegedly earned on the complained-of series of transactions, the price defendants allegedly obtained on reselling the subject aircraft to National, the alleged dollar amount of defendants' payment to Sawhny, the percentage of the resale price to National that the payment to Sawhny allegedly represented, and the dollar amounts of defendants' alleged payments to Maurer and McElfresh, it is defendants' burden to establish good cause why that information should be shielded from public scrutiny. As noted above, the dollar amount of the profit defendants

allegedly earned on the complained-of series of transactions and the price defendants allegedly

obtained on reselling the subject aircraft to National is potentially trade secret information,

whereas the evidentiary record does not support the conclusion that the dollar amounts of

defendants' alleged payments to Maurer and McElfresh could be trade secrets, while the

combination of the dollar amount and the percentage basis of the payment to Sawhny could be a

trade secret when considered in combination, but not when considered separately.

For the same reasons discussed above in connection with the prices defendants negotiated

and actually paid to Air France for the purchase of the subject aircraft and the per-month,

per-aircraft rental amount Evergreen would allegedly have been obliged to pay to defendants

under the parties' letter of intent had defendants not sold the subject aircraft to National,

defendants have met their burden to show good cause why the trade secret information should

not be disclosed to the public.  However, because defendants' arguments in favor of maintaining

the seal are all premised strictly on the proposition that all of the subject information is

proprietary trade secret information, defendants offer no evidence or argument tending to

establish any grounds for maintaining the seal in connection with any information that is not a

trade secret.  In consequence, defendants' motion is granted as set forth below to the extent the

motion addresses the dollar amount of the profit defendants allegedly earned on the

complained-of series of transactions, the price defendants allegedly obtained on reselling the

subject aircraft to National, and the dollar amount of defendants' alleged payment to Sawhny, and

denied as to the percentage of the resale price to National that defendants' payment to Sawhny

allegedly represented and as to the dollar amount of defendants' alleged payments to Maurer and

McElfresh.

Page 12 - OPINION AND ORDER

## CONCLUSION

For the reasons set forth above, defendants' motion (#67) is granted in part and denied in part, and Evergreen is directed to refile its amended complaint without seal, with the following information redacted therefrom: the dollar amount of the profit defendants allegedly earned on the complained-of series of transactions (*see* Amended Complaint, ¶¶ 15, 32, 33(k), 77, 78, 107), the proposed per-aircraft purchase price allegedly discussed between defendants and Air France (*see* Amended Complaint, ¶¶ 39, 48, 52, 56), the actual price allegedly paid by defendants to Air France for the subject aircraft, either expressed as a per-aircraft price or as an aggregate price (*see* Amended Complaint, ¶¶ 59, 60, 61, 78), the per-month, per-aircraft rental amount Evergreen would allegedly have been obliged to pay to defendants under the parties' letter of intent had defendants not sold the subject aircraft to National (*see* Amended Complaint, ¶¶ 52, 62), the price defendants allegedly obtained on reselling the subject aircraft to National (*see* Amended Complaint, ¶¶ 76, 80), and the dollar amount of the alleged payment from defendants to Sawhny in connection with his role in assisting defendants in finding an alternative purchaser for the subject aircraft (*see* Amended Complaint, ¶¶ 33(f), 73, 77).

Dated this 9th day of October, 2013.

Honorable Paul Papak
United States Magistrate Judge

Page 13 - OPINION AND ORDER