IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EVERGREEN INTERNATIONAL
AIRLINES, INC.,

        Plaintiff,

                                    3:11-CV-1416-PK

v.                                 OPINION AND
                                     ORDER

ANCHORAGE ADVISORS, LLC,
ANCHORAGE CAPITAL GROUP,
LLC, and NEXGEN AVIATION
CAPITAL, LLC,

        Defendants.

PAPAK, Magistrate Judge:

        Plaintiff Evergreen International Airlines, Inc. ("Evergreen"), filed this action against

defendants Anchorage Advisors, LLC, Anchorage Capital Group, LLC, and Nexgen Aviation

Capital, LLC, on November 22, 2011.  Evergreen amended its complaint effective August 1,

2013.  By and through its amended complaint, Evergreen alleges defendants' liability for

intentional interference with business relations, breach of fiduciary duty, and conspiracy, each

such cause of action arising out of defendants' conduct in purchasing three aircraft from Air

Page 1 - OPINION AND ORDER

France, notwithstanding Evergreen's purported right either to purchase the aircraft itself or to arrange for their purchase by a third party on its behalf and for its benefit. This court has subject-matter jurisdiction over Evergreen's claims based on the complete diversity of the parties and the amount in controversy.

Now before the court are Evergreen's motion (#86) to compel defendant Anchorage Capital Group, LLC, to produce a Federal Civil Procedure Rule 30(b)(6) designee for deposition in connection with specified topics, Evergreen's motion (#90) to compel all defendants to produce certain documents withheld from production on grounds of privilege, and Evergreen's motion (#93) to compel defendant Anchorage Capital Group, LLC, to produce certain documents withheld from production on the basis of expressed objections. In connection with each of the three foredescribed motions, Evergreen seeks specified monetary sanctions, including but not limited to its attorney fees and costs incurred in litigating its motions. I have considered the motions, telephonic oral argument on behalf of the parties, and all of the pleadings and papers on file. For the reasons set forth below, Evergreen's motion (#86) to compel production of a Rule 30(b)(6) designee is granted in part and denied in part as discussed below, Evergreen's motion (#90) to compel production of documents withheld from production on privilege grounds is denied with the proviso discussed below, Evergreen's motion (#93) to compel production of documents withheld from production on grounds of expressed objections is granted in part and denied in part as discussed below, each of Evergreen's requests for monetary sanctions is denied, and the parties are directed to bear their own fees and costs in connection with litigating the three motions.

## LEGAL STANDARDS

### I.    Scope of Permissible Discovery, Generally

Federal Civil Procedure Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense – including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter." Fed. R. Civ. P. 26(b)(1). The Rule specifies that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* However, the district courts should limit the scope of discovery under specified circumstances, as follows:

> On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
>
> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>
> (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2)(C).

### II.    Motion to Compel

As noted above, Federal Civil Procedure Rule 26(b)(1) authorizes discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. Rule 26(b)(1) is

Page 3 - OPINION AND ORDER

to be construed broadly, and encompasses any matter that bears on, or that reasonably could lead to other matters that would bear on, any issue that is or may be in the case. *See, e.g., Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 351 n. 12 (1978).

If a party elects to oppose a propounding party's discovery requests, the opposing party bears the burden of establishing that the discovery is overly broad, unduly burdensome or not relevant. *See Graham v. Casey's General Stores*, 206 F.R.D. 251, 253-4 (S.D. Ind. 2000). "Boilerplate, generalized objections are inadequate and tantamount to not making any objection at all." *Walker v. Lakewood Condominium Owners Assoc.*, 186 F.R.D. 584, 587 (C.D. Cal. 1999); *see also Farber and Partners, Inc. v. Garber*, 234 F.R.D. 186 (C.D. Cal. 2006).

Federal Civil Procedure Rule 37(a)(3)(B) empowers a propounding party to "move for an order compelling an answer, designation, production, or inspection" if:

> (i) a deponent fails to answer a question asked under Rules 30 or 31;
>
> (ii) a corporation or other entity fails to make a designation under Rule 30(b)(6) or 31(a)(4);
>
> (iii) a party fails to answer an interrogatory submitted under Rule 33, or
>
> (iv) a party fails to respond that inspection will be permitted — or fails to permit inspection — as requested under Rule 34.

Fed. R. Civ. Pro. 37(a)(3)(B). Moreover, Rule 37(a)(4) provides that "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4). Rule 26 provides that "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." Fed. R. Civ. Pro. 26(b)(1).

## III.    Attorney Fees

Federal Civil Procedure Rule 37(a)(5) governs award of attorney fees in connection with

a motion to compel:

(A)  *If the Motion Is Granted (or Disclosure or Discovery Is Provided After Filing).*  If the motion is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees.  But the court must not order this payment if:

    (i)  the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;

    (ii)  the opposing party's nondisclosure, response, or objection was substantially justified; or

    (iii)  other circumstances make an award of expenses unjust.

(B)  *If the Motion Is Denied.*  If the motion is denied, the court may issue any protective order authorized under Rule 26(c) and must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees.  But the court must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust.

(C)  *If the Motion Is Granted in Part and Denied in Part.*  If the motion is granted in part and denied in part, the court may issue any protective order authorized under Rule 26(c) and may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion.

Fed. R. Civ. P. 37(a)(5).

## ANALYSIS

### I.  Motion (#86) to Compel Rule 30(b)(6) Designation for Specified Topics

On August 7, 2013, Evergreen deposed Aziz Hassanali, the employee of defendant

Anchorage Capital Group, LLC ("ACG"), with primary responsibility in connection with the

Page 5 - OPINION AND ORDER

transactions complained of in Evergreen's complaint.  Subsequently, on September 4, 2013,

Evergreen noticed the deposition of defendant Anchorage Capital Group, LLC ("ACG") under

Federal Civil Procedure Rule 30(b)(6), in connection with 91 specified topics.  Although it

appears that defendants initially took the position that they were not obliged to produce a Rule

30(b)(6) designee for ACG on the ground that Hassanali's deposition of August 7, 2013, had been

a Rule 30(b)(6) deposition, ultimately defendants did not stand on that objection but rather

agreed to produce a designee for at least some of the noticed topics.  However, defendants further

objected to production of (and following informal negotiations refused to produce) any designee

in connection with 28 of the specified topics.  Evergreen responded by filed the motion to compel

now under consideration, and subsequently ACG agreed to produce designees for ten of the

disputed topics.  The 18 topics still in dispute are Evergreen's noticed Matters for Examination

Nos. 4-8, 12, 21, 32-37, 87, and 88-91.

### A.    Matters for Examination Nos. 4-5

Matter for Examination Nos. 4-5 are as follows:

**MATTER FOR EXAMINATION NO. 4:**
        The investment funds managed by ANCHORAGE during the period
January 2009 through June 2010 and the investments contained within those
funds.  (For purposes of this matter for examination, the terms "investment funds"
and "managed" shall have the same meaning intended by ANCHORAGE on its
website, www.anchoragecap.com.)

**MATTER FOR EXAMINATION NO. 5:**
        The investments by any ANCHORAGE partner or employee in any
investment fund managed by ANCHORAGE.

These topics address defendants' various investment funds and defendants' partners' and

employees' positions in those funds.  Evergreen argues that it is entitled to the requested

discovery because these topics relate to representations made by defendants regarding the

investment funds and because the topics are relevant to defendants' "financial motives" for

entering into the complained-of transactions. Evergreen does not, however, offer any evidence or

argument as to how defendants' representations regarding the funds to their investors might bear

on Evergreen's claims, or as to how information regarding the operation of the funds might

materially clarify defendants' financial motives beyond the clarification already provided by the

profitability of the complained-of transactions themselves. Because Evergreen has provided no

grounds to support the conclusion that the requested discovery could lead to the production of

admissible evidence, the motion is denied as to Matters for Examination Nos. 4-5.

### B.    Matters for Examination Nos. 6-8

Matter for Examination Nos. 6-8 are as follows:

**MATTER FOR EXAMINATION NO. 6:**
        The salary, bonuses, and other compensation ANCHORAGE paid to Aziz
Hassanali, in whole or part, RELATING TO the purchase of the AIRCRAFT from
AIR FRANCE and the sale of the AIRCRAFT to NATIONAL AIR CARGO.

**MATTER FOR EXAMINATION NO. 7:**
        The salary, bonuses, and other compensation ANCHORAGE paid to Aziz
Hassanali in payment, recompense, or reward for work performed during the year
2010, whether or not such salary, bonuses, and other compensation was paid
during 2010.

**MATTER FOR EXAMINATION NO. 8:**
        All "fairly profitable transactions" in which Aziz Hassanali was involved
in 2010. (For purposes of this matter for examination, the term "fairly profitable
transactions" shall have the same meaning intended by Aziz Hassanali during his
August 7, 2013, deposition in this matter.)

These topics address the compensation received by Hassanali during the year in which the

complained-of transactions took place. Evergreen takes the position that it is entitled to the

requested discovery because it relates to Hassanali's "individual financial motives" for causing defendants to enter into the complained-of transactions. Defendants take the position that the requested discovery is irrelevant to Evergreen's claims because Evergreen's contemplated arrangements fell through before defendants' complained-of conduct took place, due to Evergreen's financial inability to perform.

Evergreen's theory is that Hassanali may have induced defendants to contravene Evergreen's purported rights as alleged in Evergreen's complaint because he stood to gain more from the complained-of transactions than he would have gained had Evergreen's contemplated arrangements been effected. I agree with Evergreen that if the evidence were to establish that Hassanali received compensation in connection with the complained-of transactions in excess of what he would otherwise have received, the prospect of such additional compensation could have motivated his conduct. I further agree with Evergreen that, as the person responsible for the transactions complained of in Evergreen's complaint, Hassanali's individual financial motives are relevant to Evergreen's claims. In consequence, I find that the requested discovery is reasonably calculated to lead to the production of admissible evidence. The motion is therefore granted as to Matters for Examination Nos. 6-8.

C.    **Matters for Examination Nos. 12 and 21**

Matter for Examination Nos. 12 and 21 are as follows:

**MATTER FOR EXAMINATION NO. 12:**
        The ANCHORAGE investment fund(s) in which EVERGREEN DEBT was placed.

        * * *

**MATTER FOR EXAMINATION NO. 21:**
      Tax or regulatory filings made by ANCHORAGE concerning any investment fund which bought or sold EVERGREEN DEBT.

These topics address the investment funds into which the debt defendants purchased from Evergreen during the negotiation of their agreement were placed, and the accounting treatment that purchased debt received. Evergreen asserts that defendants' internal accounting treatment of certain debt it purchased from Evergreen could be relevant to its theory of defendants' breach of fiduciary duty. However, Evergreen offers no specific evidence or argument in support of its assertion. Because Evergreen has provided no grounds to support the conclusion that the requested discovery could lead to the production of admissible evidence, the motion is denied as to Matters for Examination Nos. 12 and 21.

**D.**    **Matters for Examination Nos. 32-37**

Matter for Examination Nos. 32-37 are as follows:

**MATTER FOR EXAMINATION NO. 32:**
      The internal rate of return for investments included in the Anchorage Illiquid Opportunities Fund. (For purposes of this matter for examination, the term "internal rate of return" shall have the same meaning intended by the use of the term "IRR" at various places in the document produced as ANCH-A00002423, and the term "Anchorage Illiquid Opportunities Fund" shall refer to that identified by Aziz Hassanali during his August 7, 2013, deposition in this matter.)

**MATTER FOR EXAMINATION NO. 33:**
      The minimum investment commitment for investment in the Anchorage Illiquid Opportunities Fund. (For purposes of this matter for examination, the term "Anchorage Illiquid Opportunities Fund" shall refer to the investment fund so identified by Aziz Hassanali during his August 7, 2013, deposition in this matter.)

**MATTER FOR EXAMINATION NO. 34:**
      The identities of the limited partners, members, or other investors participating in the Anchorage Illiquid Opportunities Fund. (For purposes of this matter for examination, the term "Anchorage Illiquid Opportunities Fund" shall

refer to the investment fund so identified by Aziz Hassanali during his August 7, 2013, deposition in this matter.)

**MATTER FOR EXAMINATION NO. 35:**
The internal rate of return for investments included in the limited partnership, limited liability company, or other fund known as Anchorage Capital Master Offshore, Ltd.

**MATTER FOR EXAMINATION NO. 36:**
The minimum investment commitment for investment in the limited partnership, limited liability company, or other fund known as Anchorage Capital Master Offshore, Ltd.

**MATTER FOR EXAMINATION NO. 37:**
The identities of the limited partners, members, or other investors participating in the in the limited partnership, limited liability company, or other fund known as Anchorage Capital Master Offshore, Ltd.

These topics address the defendants' various investment funds and the investors therein. Evergreen takes the position that the rules under which these funds were managed, and the return defendants hoped to achieve on the investments in these funds, are directly relevant to the calculations defendants performed in determining whether or not to contravene their purported arrangements with Evergreen. Evergreen argues that these considerations bear directly on the question whether defendants' negotiation position in connection with its decision not to go forward with Evergreen's contemplated arrangements was genuine or pretextual. As to the "Anchorage Illiquid Opportunities Fund," Evergreen additionally argues that only defendants' partners and employees were investors, rather than any of defendants' clients, so that privacy concerns are not at issue.

Evergreen provides no argument or evidence to support the conclusion that the accuracy or inaccuracy of any negotiation position adopted by any defendant could have any bearing on any of Evergreen's claims. Assuming *arguendo* that defendants adopted an inaccurate

negotiation position based on an intentional misrepresentation regarding the internal rules governing any of defendants' investment funds, Evergreen would be no closer than it otherwise would be to establishing defendants' liability for intentional interference with Evergreen's economic relations, breach of fiduciary duty, or conspiracy. Moreover, defendants' post-transaction investment treatment of its earnings is without bearing on defendants' purported financial motivation to contravene Evergreen's rights; as noted above, it is the amount of the profit earned on the complained-of transactions themselves that is at issue, rather than the subsequent use to which such profits were put. The motion is therefore denied as to Matters for Examination Nos. 32-37.

### E.    Matter for Examination No. 87

Matter for Examination No. 87 is as follows:

**MATTER FOR EXAMINATION NO. 87:**
    The authenticity of ALL DOCUMENTS produced by YOU in response to
    EVERGREEN'S Requests for Production, Sets One and Two.

This topic addresses authentication of defendants' discovery production. Evergreen argues that it is entitled to depose ACG regarding the authenticity of its document production, to which defendants have refused to stipulate. I agree with Evergreen. Defendants can either stipulate to the authenticity of their own document production or accept the burden of cooperating with Evergreen's efforts to establish the same. The motion is granted as to Matter for Examination No. 87.

### F.    Matters for Examination Nos. 88-91

Matter for Examination Nos. 88-91 are as follows:

**MATTER FOR EXAMINATION NO. 88:**
    The COMPLAINT and allegations contained therein.

**MATTER FOR EXAMINATION NO. 89:**
    ALL facts RELATING TO The Seventh Affirmative [defense] alleged by
YOU, that EVERGREEN's injuries "were caused, in whole or in part, by
Evergreen's own culpable conduct."

**MATTER FOR EXAMINATION NO. 90:**
    ALL facts RELATING TO The Eight Affirmative [defense] alleged by
YOU, that EVERGREEN has failed "to mitigate its alleged damages."

**MATTER FOR EXAMINATION NO. 91:**
    ALL facts RELATING TO The Ninth Affirmative [defense] alleged by
YOU, that the relief sought by EVERGREEN "is barred by the doctrines of
waiver, estoppel and unclean hands."

These topics address the parties' respective factual allegations regarding the basis for Evergreen's

claims and/or defendants' defenses thereto.  Evergreen argues that it is entitled to the requested

discovery, which addresses the facts alleged by the parties rather than communications between

parties and their counsel or attorney work product, due to its patent relevance.  Evergreen is

correct.  Privilege is not implicated in any way, and defendants' objection that compliance would

be burdensome is without merit.  The motion is granted as to Matters for Examination Nos.

88-91.

## II.    Motion (#90) to Compel Production of Documents Withheld on Privilege Grounds

    On December 26, 2012, Evergreen served each of defendants ACG and Nexgen Aviation

Capital, LLC ("NAC"), with sets of near-identical requests for production of documents.  On

January 25, 2013, both defendants objected generally to the requests to the extent they addressed

privileged documents.  On April 30, 2013, NAC provided Evergreen with a privilege log, and

ACG did likewise on June 3, 2013.  Certain documents withheld from production are listed in

both logs as having been copied to or authored by Paul Sawhny, the principal of Clipper

Aviation, a third party to this lawsuit. It is undisputed that, pursuant to three "Representation

Agreements" between defendants and Clipper Aviation, the earliest of which is dated May 10,

2010, Sawhny was an independent contractor providing consulting services to defendants in

connection with valuation and other decisions regarding the aircraft purchased from Air France.

It is further undisputed that between March 11 and May 10, 2010, Sawhny was engaged to

provide substantially the same services contemplated in the Representation Agreements, pursuant

to an informal letter agreement. Evergreen challenges the defendants' assertion of privilege in all

documents copies of which were provided to or authored by Sawhny.

### A.     Choice of Law as to Privileged Documents

Defendants argue that New York privilege law, rather than Oregon privilege law, should

govern their assertion of privilege. Defendants' argument is premised on the theory that New

York is the jurisdiction with the most significant relationship to communications between

defendants' counsel and Sawhny, because defendants and Sawhny were both in New York at the

time all or most of the subject communications were made. However, defendants do not identify

any material difference between Oregon and New York law of privilege. Moreover, defendants

concede that no Oregon court has ever adopted the principle that a choice-of-law analysis

separate from the analysis of law governing the parties' dispute is required in connection with

testing assertions of privilege in out-of-state communications. My own analysis of Oregon law

suggests no grounds for concluding that the Oregon courts would apply the privilege law of any

other jurisdiction under circumstances where the merits of a lawsuit are otherwise governed

entirely by Oregon law. In consequence, I find that defendants' assertions of privilege are

Page 13 - OPINION AND ORDER

governed by Oregon law.

**B.      Discussion**

As a preliminary matter, I note that defendants have asserted the lawyer-client privilege in all of the subject communications, and have additionally asserted the attorney work-product doctrine in connection with a subset of the subject communications.  However, defendants do not argue or suggest that any of the documents provided for Sawhny's review or authored by him were produced in anticipation of litigation, but rather take the position that they were prepared in connection with the various business transactions defendants engaged in or considered in connection with the aircraft purchased from Air France.  Under Oregon law, the work-product doctrine is applicable only to work product prepared in anticipation of litigation.  *See United Pac. Ins. Co. v. Trachsel*, 83 Or. App. 401, 404 (1987), *citing Brink* et ux *v. Multnomah County*, 224 Or. 507, 517 (1960); *see also* Or. R. Civ. P. 36(B)(3).  Defendants' assertions of the work-product doctrine in the subject communications are therefore not well taken, and only the lawyer-client privilege is at issue.

Evergreen's primary argument is that Sawhny's receipt or authorship of the subject communications removed them from the scope of the lawyer-client privilege, because Sawhny was an independent contractor rather than an employee of any defendant or an agent with authority to bind any defendant.  Oregon's statutory codification of the lawyer-client privilege provides, in relevant part, that:

> A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client:
>
> (a)      Between the client or the client's representative and the client's

lawyer or a representative of the lawyer. . . .

Or. Rev. Stat. 40.225(2).  For purposes of the privilege:

"Representative of the client" means:

(A)     A principal, an officer or a director of the client; or

(B)     A person who has authority to obtain professional legal services, or
        to act on legal advice rendered, on behalf of the client, or a person
        who, for the purpose of effectuating legal representation for the
        client, makes or receives a confidential communication while
        acting in the person's scope of employment for the client.

Or. Rev. Stat. 40.225(1)(d). Evergreen notes, correctly, that under the Representation

Agreements between defendants and Clipper Aviation, Sawhny was to act as defendants'

"independent contractor and . . . not . . . an agent or employee," that Clipper Aviation was "not

authorized to obligate or commit [defendants] in any manner," and that Clipper Aviation was not

authorized "to hold itself out" as having such authority.  On the basis of the foregoing, Evergreen

offers the argument that Sawhny's receipt or authorship of the subject communications destroyed

the privilege because Sawhny was not employed by and lacked authority to bind any defendant,

and therefore could not have served as the "representative" of any defendant pursuant to Or. Rev.

Stat. 40.225(1)(d)(B).

I am aware of no Oregon case construing the phrase "in the person's scope of employment

for the client" as it is used in Section 40.225(1)(d)(B), and the parties cite none.  However,

analysis of the legislative history of the 2009 amendment by and through which that phrase was

added to the statutory language establishes that it was intended to "[p]rotect[] the

communications between a business and an independent contractor to the same extent that the

privilege applies to an employee of the [business]."  House Judiciary Committee Notes and Bill

Tracking Summary on HB 2453. At oral argument in connection with Evergreen's motion, counsel for Evergreen conceded that, in its current form, Section 40.225 provides that the lawyer-client privilege is applicable to communications received or authored by independent contractors of the client in the scope of such contractors' provision of services to the client. Because, it appears that all of the subject communications as to which Sawhny was a recipient or author addressed the same issues in connection with which defendants retained Sawhny's services, I reject Evergreen's argument that the lawyer-client privilege may not lie in connection with any of the subject communications due to Sawhny's receipt or authorship thereof.

Evergreen argues in the alternative that all of the subject communications dating from prior to May 10, 2010, are necessarily outside the scope of the privilege, because defendants and Clipper Aviation had not yet formalized their contractual relationship at the time those communications took place. However, as noted above, between March 11 and May 10, 2010, Sawhny was engaged to provide substantially the same services contemplated in the Representation Agreements, pursuant to an informal letter agreement. Evergreen offers no evidence to the contrary, and none of the subject communications appear to date from prior to March 11, 2010. I therefore likewise reject Evergreen's alternative argument, except to the limited extent, if any, that any of the subject communications may date from prior to March 11, 2010.

For the foregoing reasons, Evergreen's motion to compel production of documents withheld from production on grounds of privilege is denied, except to the extent, if any, that the subject communications date from prior to March 11, 2010. As to documents withheld from production on grounds of privilege that were provided to or authored by Sawhny prior to March

Page 16 - OPINION AND ORDER

11, 2010, if any exist, the motion is granted.

## III.   Motion (#93) to Compel Production Notwithstanding Objections

On August 21, 2013, Evergreen served each of defendants ACG and NAC with sets of near-identical requests for production of documents.  Defendants objected to certain requests on the grounds that they were unreasonably broad, vague, burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  Evergreen moves to compel production of the subject documents, specifically Requests Nos. 33, 35-38, 46, 49, and 53-55.

### A.   Requests for Production Nos. 33 and 38

Requests for Production Nos. 33 and 38 are as follows:

**REQUEST NO. 33:**
ALL DOCUMENTS reflecting the investment funds managed by ANCHORAGE during the RELEVANT TIME PERIOD and the investments contained within those funds. (For purposes of this request, the terms "investment funds" and "managed" shall have the same meaning intended by ANCHORAGE on its website, www.anchoragecap.com.)

* * *

**REQUEST NO. 38:**
DOCUMENTS sufficient to establish investments by any ANCHORAGE partner or employee in any investment fund managed by ANCHORAGE.

These requests address defendants' various investment funds and defendants' partners' and employees' positions in those funds.  As it did in connection with its noticed Matters for Examination Nos. 4 and 5, Evergreen argues that the requested documents are relevant to defendants' financial motives for entering into the complained-of transactions.  For the same reasons discussed above in connection with Matters for Examination Nos. 4 and 5, however, Requests Nos. 33 and 38 are not reasonably calculated to lead to the discovery of admissible

evidence. The motion is therefore denied as to Requests for Production Nos. 33 and 38.

**B.      Requests for Production Nos. 35-37**

Requests for Production Nos. 35-37 are as follows:

**REQUEST NO. 35:**
        DOCUMENTS sufficient to establish the salary, bonuses, and other compensation ANCHORAGE paid to Aziz Hassanali, in whole or part, RELATING TO the purchase of the AIRCRAFT from AIR FRANCE and the sale of the AIRCRAFT to NATIONAL AIR CARGO.

**REQUEST NO. 36:**
        DOCUMENTS sufficient to establish the salary, bonuses, and other compensation ANCHORAGE paid to Aziz Hassanali in payment, recompense, or reward for work performed during the year 20 I 0, whether or not such salary, bonuses, and other compensation was paid during 2010.

**REQUEST NO. 37:**
        ALL DOCUMENTS reflecting the designations and the profitability of all "fairly profitable transactions" in which Aziz Hassanali was involved in 20 I 0. (For purposes of this request, the term "fairly profitable transactions" shall have the same meaning intended by Aziz Hassanali during his August 7, 2013, deposition in this matter.)

These topics address the compensation received by Hassanali during the year in which the

complained-of transactions took place. For the same reasons discussed above in connection with

Evergreen's noticed Matters for Examination Nos. 6-8, these requests are reasonably calculated to

lead to the production of admissible evidence. In consequence, the motion is granted as to

Requests for Production Nos. 35-37.

**C.      Requests for Production Nos. 46 and 49**

Requests for Production Nos. 46 and 49 are as follows:

**REQUEST NO. 46:**
        ALL DOCUMENTS identifying the ANCHORAGE investment fund or funds in which EVERGREEN's DEBT was placed, held, or transferred to or from.

* * *

**REQUEST NO. 49:**
ALL tax or regulatory filings made by ANCHORAGE concerning any
investment fund which bought or sold EVERGREEN DEBT, including, but not
limited to, IRS, SEC, DOJ, or CFTC filings for the RELEVANT TIME PERIOD.

These requests address the investment funds into which the debt defendants purchased from

Evergreen during the negotiation of their agreement were placed, and the accounting treatment

the purchased debt received. For the same reasons discussed above in connection with

Evergreen's noticed Matters for Examination Nos. 12 and 21, these requests are not reasonably

calculated to lead to the production of admissible evidence. In consequence, the motion is denied

as to Requests for Production Nos. 46 and 49.

**D.    Requests for Production Nos. 53-55**

Requests for Production Nos. 53-55 are as follows:

**REQUEST NO. 53:**
DOCUMENTS sufficient to establish the projected internal rate of return
for investments included in the Anchorage Illiquid Opportunities Fund as well as
whether and how the internal rate of return changed over time for the
RELEVANT TIME PERIOD. (For purposes of this request, the term "internal rate
of return" has the same meaning as was intended by the use of that term by Aziz
Hassanali during his August 7, 2013, deposition in this matter.)

**REQUEST NO. 54:**
DOCUMENTS sufficient to establish the minimum commitment for
investor participation in the Anchorage Illiquid Opportunities Fund during the
RELEVANT TIME PERIOD.

**REQUEST NO. 55:**
DOCUMENTS sufficient to establish the identities of investors
participating in the Anchorage Illiquid Opportunities Fund during the
RELEVANT TIME PERIOD.

These requests address the defendants' various investment funds and the investors therein. For

the same reasons discussed above in connection with Evergreen's noticed Matters for Examination Nos. 32-37, these requests are not reasonably calculated to lead to the production of admissible evidence. In consequence, the motion is denied as to Requests for Production Nos. 53-55.

## IV.    Requested Sanctions, Fees, and Costs

I find that in connection with each of the three motions discussed above, no party adopted any legal position that was not at least substantially justified. In consequence, I find that under Federal Civil Procedure Rule 37(a)(5) it is appropriate that each party should bear its own costs in connection with litigating each of the three motions. Evergreen's requests for sanctions in connection with each of the three motions are denied.

## CONCLUSION

For the reasons set forth above, Evergreen's motion (#86) to compel production of a Rule 30(b)(6) designee is granted in part and denied in part as discussed above, Evergreen's motion (#90) to compel production of documents withheld from production on privilege grounds is denied with the proviso discussed above, Evergreen's motion (#93) to compel production of documents withheld from production on grounds of expressed objections is granted in part and denied in part as discussed above, each of Evergreen's requests for monetary sanctions is denied,

/ / /

/ / /

/ / /

/ / /

/ / /

Page 20 - OPINION AND ORDER

and the parties are directed to bear their own fees and costs in connection with litigating the three

motions.


Dated this 27th day of November, 2013.

Honorable Paul Papak
United States Magistrate Judge