IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ALFRED THOMAS GIULIANO,

Plaintiff,

3:11-CV-1416-PK

v.

OPINION AND ORDER

ANCHORAGE ADVISORS, LLC, ANCHORAGE CAPITAL GROUP, LLC, and NEXGEN AVIATION CAPITAL, LLC,

Defendants.

PAPAK, Magistrate Judge:

Former plaintiffs Evergreen International Airlines, Inc., and Evergreen International Aviation, Inc. (collectively, "Evergreen"), filed this action against defendants Anchorage Advisors, LLC, Anchorage Capital Group, LLC, and Nexgen Aviation Capital, LLC, on November 22, 2011. Evergreen amended its complaint effective August 1, 2013. Effective April 9, 2014, following Evergreen's Chapter 7 bankruptcy, Alfred Thomas Giuliano (the "trustee") was substituted into this action as plaintiff in Evergreen's stead. By and through Evergreen's

amended complaint, the trustee alleges defendants' liability for: (i) intentional interference with business relations, (ii) breach of fiduciary duty, and (iii) civil conspiracy. This court has subject-matter jurisdiction over the trustee's claims based on the complete diversity of the parties and the amount in controversy.

Now before the court is defendants' motion (#181) to reopen defendants' fact discovery for a period of 150 days, to extend defendants' deadline for submission of expert disclosures until three weeks following the close of such reopened discovery period, and to extend pre-trial deadlines and the date for trial of this matter by at least a like period. I have considered the motion, oral argument on behalf of the parties, and all of the pleadings and papers on file. For the reasons set forth below, defendants' motion is denied as moot.

## LEGAL STANDARD

Once a district court has filed a pretrial scheduling order pursuant to Federal Civil Procedure Rule 16, "that rule's standards control[]" amendment of the schedule so established. *Johnson v. Mammoth Recreations*, 975 F.2d 604, 607-608 (9th Cir. 1992). Rule 16 provides, in relevant part, that a case schedule "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Local Rule 16-3 provides further, in relevant part, that:

[O]bjections to any court-imposed deadline must be raised by motion and must:

(1) Show good cause why the deadlines should be modified.

(2) Show effective prior use of time.

(3) Recommend a new date for the deadline in question.

(4) Show the impact of the proposed extension on other existing deadlines, settings, or schedules.

L.R. 16-2.

## MATERIAL HISTORY AND ANALYSIS

Prior to the close of fact discovery in this action, on February 25, 2013, Evergreen responded to an interrogatory propounded by defendants in discovery regarding its damages claims with the statement that, "Evergreen claims as categories of damages compensatory, consequential, *lost profits*, and/or restitution, *the amounts of which will be established though further discovery and expert testimony*." (Emphasis supplied.) On April 12, 2013, Evergreen supplemented that response, in relevant part as follows:

> **Evergreen lost a variety of business opportunities as a result of not having the Aircraft in its fleet.** Evergreen's Air Mobility Command ("AMC") contracts with USTranscom call for 747-400s only. Evergreen was not able to take advantage of the full amount of work available to it under that contract because it did not have the Aircraft as well as any subsequent trips to or from China. Evergreen was also unable to fulfill commercial requests for aircraft services including a request requiring 747-400s from Saudi Airlines. The analysis and quantification of such consequential and lost profits damages will be the subject of expert analysis and opinion and Evergreen expressly reserves its right to adjust the amount, nature, and calculation of its damages upon such subsequent analysis. At present, Evergreen estimates that its **consequential and lost profits damages are in excess of $50 million and Evergreen will supplement this amount upon further discovery and analysis.**

(Emphasis supplied.)

On October 17, 2013, defendants deposed Evergreen's Chief Financial Officer, Ryan Smith as Evergreen's Federal Civil Procedure Rule 30(b)(6) designee. The following exchanges took place at that deposition:

> Q.  Have you been asked by [Evergreen] to prepare an analysis of the consequential and lost profit damages that Evergreen claims as part of this case?
>
> * * *

Page 3 - OPINION AND ORDER

| | |
|---|---|
| A. | No. As said, we're hiring an expert witness. |
| Q. | Has anyone within the company been assigned to provide information to that expert witness? |
| A. | Yeah. |
| Q. | And who within the company has been assigned to provide information? |
| A. | That would be me. |
| Q. | And have you done so? |
| A. | Not at this time. |
| Q. | How did Evergreen come up with the estimate that its "Consequential and lost profit damages are in excess of $50 million"? |
| A. | Based on the amount of military work lost and also the commercial opportunities that were lost with them. |
| Q. | And the amount of military work lost represents approximately what figure? |
| A. | The one year was $27 million. We haven't calculated out the remaining years. Then the commercial contracts – |

\* \* \*

| | |
|---|---|
| Q. | But Mr. Smith, you were anticipating my next question. What was the estimate of the commercial opportunities lost by Evergreen? |
| A. | It would be -- it would be another $27 million on the back end of the military flights and then about $3 million annually on the [aircraft crew maintenance and insurance] opportunities. |
| Q. | Annually for how many years? |
| A. | That would have been since 2010, so three years and counting. |

Deposition of Ryan Smith, 39:2 - 40:17.

| | |
|---|---|
| Q. | What has -- what, if anything, has prevented Evergreen from obtaining two |

> more 747-400s to get up to six that would have had by this year, 2013, under the plan?
>
> A.  The financial condition of the airlines has changed since that time frame.
>
> Q.  That's the financial condition of Evergreen Airlines?
>
> A.  Yes.
>
> Q.  What happened?
>
> A.  By not acquiring these aircraft, we basically went to last in line with the military once the military changed to all 400s, since we didn't have any, which was a very detrimental thing for the airlines. That's why we moved the one we did have back to military, and we're just recovering from that loss of the AMC revenue.

Smith Depo., 51:22 - 52:13.

> Q.  ...Based on the work that Evergreen has done to date, do you believe that any of the numbers in the interrogatory answer -- that there's a more accurate number today than what's reflected in the answer?
>
> * * *
>
> A.  I mean, I came up with the original 50, so since it's only been my work, that's why I believe it's still 50. The expert will have his number.
>
> Q.  Well, the last sentence of that long paragraph states "At present, Evergreen estimates that its consequential and lost profits damages are in excess of $50 million and Evergreen will supplement this amount upon further discovery and analysis."
> Does in excess of $50 million mean the $57 million that would be --
>
> A.  No, because again, that was just one year of calculations, so I would say the number would be higher.
>
> Q.  Okay. How much higher?
>
> A.  I would need to do more analysis to get you a higher number.
>
> Q.  And have you yet performed that analysis?

Page 5 - OPINION AND ORDER

A.   Not at this time.

Smith Depo., 55:13 - 56:16.

On October 31, 2013, Evergreen supplemented its interrogatory responses once again relative to the supplement of April 2013, indicating that the USTrancom losses included inability to make follow-on trips to or from Asia generally rather than merely to or from China, and adding that "Evergreen paid more for leases of 747-400s from Cyterna and BALI because they were aware of Evergreen's weakened bargaining position as a result of Evergreen's desperate need for 747-400s in its fleet."

Fact discovery in this action closed on that same day, October 31, 2013, pursuant to this court's order (#82) dated September 23, 2013.

On December 31, 2013 – during the pendency of this action and after defendants' currently pending motion (#120) for summary judgment and Evergreen's currently pending motion (#123) for partial summary judgment were filed – Evergreen (that is, both Evergreen International Airlines, Inc., and Evergreen International Aviation, Inc.) filed voluntary petitions for Chapter 7 bankruptcy relief in the United States Bankruptcy Court for the District of Delaware. On January 2, 2014, Alfred Thomas Giuliano was appointed as Chapter 7 trustee of Evergreen's estate. Also on January 2, 2014, Evergreen filed a notice (#151) of its Chapter 7 bankruptcy and the appointment of Giuliano as trustee with the court. On January 7, 2014, the court held a telephonic status conference to discuss the implications of Evergreen's bankruptcy for these proceedings.

On February 14, 2014, Evergreen provided its Federal Civil Procedure Rule 26 disclosures to the defendants. Among those disclosures was the report of Evergreen's economics

Page 6 - OPINION AND ORDER

expert, Samuel Engel. By and through that report, Evergreen for the first time disclosed to the defendants its theory that the present value of the lost profits caused by the complained-of conduct in this action was $23.7 million. In addition, the Engel report contained the following paragraph:

> Evergreen would have been able to enjoy future lost profits from the Air France Aircraft because the lost profits between 2010 and 2013 would have avoided the company's bankruptcy filing. Evergreen's bankruptcy filing came at the end of a year when the airline lost $54 million (preliminary through November 2013). Profits that would have been earned from the Air France Aircraft would have been sufficient to reverse this loss, dramatically reducing the probability of bankruptcy.

Engel Report at 21 (footnote omitted). Defendants take the position that the gravamen of this paragraph is to opine that, but for its bankruptcy, Evergreen would not have lost a claimed $23.7 million in profits. On the basis of that construction, defendants seek to reopen discovery in this action on the grounds that additional discovery would be required to determine the cause of Evergreen's bankruptcy.

On March 27, 2014, the court conducted telephonic oral argument regarding the gravamen of the cited paragraph of Engel's report and regarding Evergreen's entitlement to seek future lost profits damages in connection with time periods occurring after the date of Evergreen's bankruptcy and the cessation of all its business operations. Because the applicable case law instructs that post-cessation lost profits would be available to a plaintiff that ceased all business operations only where it was the defendants' complained-of conduct that caused the cessation, *see, e.g., SnB, Incorporation v. Ehlers*, 98 Or. App. 562, 564, 565 (1989), *Lawrence v. Underwood*, 81 Or. App. 533, 538-539 (1986), I ruled on the record that Evergreen would only be entitled to seek future lost profits after December 31, 2013 (the date it filed for bankruptcy and

Page 7 - OPINION AND ORDER

ceased all business operations), in the event it both pled and proved that but for defendants' complained-of conduct it would not have filed for bankruptcy protection or closed its business. I further directed Evergreen to make an election as to whether it would amend its pleadings to allege that defendants' conduct caused it to enter bankruptcy and to inform the court of its election by March 28, 2014, and ruled that in the event Evergreen so elected, defendants' motion to reopen discovery would be granted in whole or in part, and otherwise denied as moot.

On March 28, 2014, Evergreen advised the court that it would not amend its pleading to state that defendants' conduct caused its bankruptcy, and would not offer proof of such causation in support of its claim for future lost profits damages, although it expressly preserved its objections to and right to appeal from my rulings on the record (#200) of March 27, 2014. In consequence of that election, the trustee is not entitled to future lost profits as to any time period subsequent to Evergreen bankruptcy filings of December 31, 2013, and defendants' motion (#181) ro reopen discovery is therefore denied as moot.

## CONCLUSION

For the reasons set forth above, defendants' motion (#181) to reopen discovery is denied as moot.

Dated this 11th day of April, 2014.

Honorable Paul Papak
United States Magistrate Judge